ALLSTON FINANCE COMPANY, INC. *vs*. HANOVER INSURANCE
COMPANY.

Suffolk. December 16, 1983. — May 3, 1984.

Present: ARMSTRONG, SMITH, & WARNER, JJ.

*Insurance,* Agent, Motor vehicle insurance, Finance company. *Estoppel.*

In an action by an insurance premium financing company to recover from an
insurer the unearned portion of the premium it had paid on a cancelled
policy of motor vehicle insurance, the financing company was not entitled
to have this amount computed on the basis that the insurer had warranted,
through its agent's statement in a premium financing agreement, that
the premium would remain at the level stated in the agreement. [97-98]

An insurance premium financing company was treated as having accepted
the risk that the premium on a policy of motor vehicle insurance would
be higher than the figure stated by the insurer's agent in a premium
financing agreement, so long as the agent did not negligently or delib-
erately misstate the premium. [98-99]

In an action by an insurance premium financing company to recover from an
insurer the unearned portion of a motor vehicle insurance premium it
had paid under a financing agreement, further proceedings were to be
had on the issue whether the insurer was estopped from asserting several
increases in the premium which occurred after delivery of the agreement.
[99-100]

CIVIL ACTION commenced in the Superior Court on July 27,
1977.

The case was heard by *Cashman,* J., a Juvenile Court judge
sitting under statutory authority.

*Michael J. Liston (Joanne E. Barker* with him) for the de-
fendant.

*Owen Gallagher* for the plaintiff.

ARMSTRONG, J. The defendant (Hanover) appeals from a
judgment which declared it liable to the plaintiff (Allston), a

premium finance company, for a return premium on an automobile insurance policy issued to Turnpike Auto Sales, Inc. (Turnpike). The policy was cancelled May 27, 1977, and had been in effect for 146 days. The return premium was computed by proration based on an annual premium of $18,000. See G. L. c. 175, § 113A(2). The $18,000 figure was the amount which the insurance agent had stated in the premium finance agreement (note) as the total premium, or "cash price." See G. L. c. 255C, § 13, as in effect prior to St. 1981, c. 733, § 12. The note was assigned by the agent to Allston, which paid the $18,000 premium to Hanover.

Allston's problem arose because the premium was seriously underestimated by the agent. In late February, 1977, Hanover's underwriting department determined the estimated annual premium based on 1976 rates to be $25,000. Hanover billed the agent in that amount; the agent notified Allston of the bill, asking that it forward its check for $18,000 to Hanover "until we resolve the balance due." Apparently soon thereafter, Hanover billed the agent approximately $32,000 for Turnpike's policy "to reflect the new higher [basic motor vehicle insurance rates for 1977]." Thereafter (possibly March 9, 1977), "after receiving from [Turnpike's previous insurer] the record of previous loss history of Turnpike," Hanover recalculated the premium to approximately $81,000. Computed on the basis of an annual premium in that amount, the portion chargeable for the 146 days of the policy's life was approximately $32,400. Hanover received no payment other than Allston's $18,000; its position was and is that there was no unearned premium to be returned to Allston.

Allston takes the position — one the trial judge implicitly accepted — that the $18,000 stated in the note as the premium constituted a warranty from Hanover (acting through its agent) to Allston that the premiums would remain at that level and that the return premiums should be computed on that basis. Hanover argues — we think correctly — that language in the note itself contemplated the possibility of a change in premi-

um[1] and, moreover, that a premium finance company, as one "implicated in the process of selling insurance to the public," *Carter* v. *Empire Mut. Ins. Co.,* 6 Mass. App. Ct. 114, 121 (1978), knows or should know that rates chargeable for motor vehicle policies in Massachusetts are subject to the vicissitudes of legislative and administrative regulation; they are often simply unavailable at the time policies must be written and financed (see, e.g., *Attorney Gen.* v. *Commissioner of Ins.,* 370 Mass. 791, 794-795 [1976]) and on occasion have been subject to retroactive revision after policies have been written at premium levels previously thought final. See *American Manufacturers Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 193-195 (1978). We take judicial notice of the fact that 1977 — the policy year here in issue — was one of unusual regulatory turbulence. *Id.* at 185-187.

On the other hand, it cannot be said as matter of law that the insurance agent has no duty to the premium finance company to state the premium accurately within the limits of knowledge then available or to apprise the premium finance company if no effort had been made to determine the correct premium. The agent knows that the premium finance company relies on the return premium as the security for its loan, *New England Acceptance Corp.* v. *American Manufacturers Mut. Ins. Co.,* 4 Mass. App. Ct. 172, 175-177 & n.5 (1976), *S.C.,* 373 Mass. 594 (1977), and that any understatement of the amount of the premium will have the potential for impairing or destroying the value of that security. The correct premium, or a reasonable estimate if rates are not available, is a matter peculiarly within the knowledge of the company and its agent. In Massachusetts, the premium finance note runs from the insured to the agent, see G. L. c. 255C, § 1(1).[2] The premium finance company

---

[1] One of the provisions of the note states: "The assured authorizes the holder to make corrections only to the extent such become necessary as a result of a change in premium charges by the insurance underwriter." It is not apparent from the context what types of "corrections" the provision contemplates.

[2] Contrast in this respect the New York practice described in *Edgewood Serv. Co.* v. *State Farm Automobile Ins. Co.,* 80 Misc. 2d 672, 673-674 (N.Y. Dist. Ct. 1975), where the insured may deal directly with the premium finance company in obtaining the financing.

typically sees neither the insured nor his application before the note is assigned, and it relies on the integrity and due care of the agent when it accepts the assignment. 4 Mass. App. Ct. at 176-177. As one involved in the industry, the premium finance company should be taken to know and accept the risk that rates when finally determined may vary from reasonable estimates or that rates may in some instances be changed retroactively by regulation. Compare *Citizens State Bank* v. *Travelers Indem. Co.*, 7 Wis.2d 451, 457-458 (1959). We do not think it should be taken to have accepted the risk that the agent may have employed a meaningless figure in stating the premium or may have negligently or deliberately understated the premium. Where the premium finance company is unaware that the stated figure is not intended as a reliable estimate of the premium, the agent, who acts for the insurer both in the preparation and the assignment of the note, *New England Acceptance Corp.,* 4 Mass. App. Ct. at 178-180, may cause the insurer to be bound by the representations therein made. *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 727-732 (1974), *S.C.,* 368 Mass. 811 (1975).

This case was heard on a statement of agreed facts which furnished an adequate basis for deciding the case on the theories advanced by the parties but which does not furnish an adequate basis for determining whether and to what extent the insurer may be estopped by the principles stated in the *Cellucci* case from asserting the several premium increases in defense of Allston's claim. For the first increase (from the agent's figure of $18,000 to the underwriter's figure of $25,000) no explanation is given. The second increase (to $32,000) is said to be related to a new rate filing, but the reason for the filing and when it was made and approved are not revealed. The third increase (to $81,000) appears to have been based on Turnpike's previous loss record, obtained from the prior insurer.[3] When that record was obtained and the extent to which it may have contradicted statements made by Turnpike in its application

---

[3] Relative to experience rating, see *Century Cab, Inc.* v. *Commissioner of Ins.*, 327 Mass. 652 (1951).

cannot be known from the present record.[4] In these circumstances we think the parties should have an opportunity either to withdraw the statement of agreed facts in whole or in part or to supplement the facts agreed to by stipulation or trial.

The judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[4] Without a concrete factual situation we decline to speculate on the legal effect to be given rate increases caused by an insured's misrepresentation of his accident, claims, and convictions history. It is possible that the insurer may in some circumstances have a duty of verification of such information through the records of prior insurers before representing the year's premium to a premium finance company.