21 Mass. App. Ct. 669      669

Acme Plastering Co. *v*. Boston Housing Authority.

ACME PLASTERING CO., INC. *vs*. BOSTON HOUSING
AUTHORITY.

Suffolk. November 20, 1985. — March 11, 1986.

Present: BROWN, KAPLAN, & WARNER, JJ.

*Practice, Civil*, Findings by judge. *Contract*, Performance and breach, For
 public works, Implied. *Interest*.

In an action arising out of disputes about work performed by a contractor
 under a written contract for the waterproofing of buildings at a public
 housing development operated by the Boston Housing Authority, the
 judge's conclusion that the contractor substantially performed under the
 contract and made a good faith effort to perform fully was supported
 by his findings that the contractor's work was done in a good and
 workmanlike manner and achieved the contracted-for results in spite of
 certain conditions created by the authority which hampered its ability
 to conform to the contract; that exculpatory circumstances excused the
 contractor's decision to apply cement plaster by hand troweling instead
 of by machine as called for by the contract; and that the authority was
 at relevant times in a "state of turmoil and disarray" which contributed
 to the contractor's difficulties in performing under the contract. [671-674]
Where recovery in an action arising out of disputes about the work performed
 by a contractor under a written contract for the waterproofing of buildings
 at a public housing development was not based on the contract but on
 the theory of quantum meruit, it was error for the judge to award penalty
 interest under G. L. c. 30, § 39K. [674-677]

CIVIL ACTION commenced in the Superior Court Department
on March 19, 1980.

The case was heard by *George W. Cashman*, J., sitting
under statutory authority.

*Wilbur E. Commodore* (*Robert B. Tolins* with him) for the
defendant.

*Sally A. Corwin* (*Jerrold A. Olanoff* with her) for the plaintiff.

WARNER, J. This case arose out of disputes about the work
performed by the plaintiff (Acme) under a written contract

with the Boston Housing Authority (BHA) for the waterproofing of eighty roof exits (called penthouses) at a housing development in South Boston. After a jury-waived trial in the Superior Court, the judge made findings of fact and rulings of law, and a judgment in quantum meruit was entered for the plaintiff in the amount of $112,203.84. On motion of the plaintiff, an amended judgment, which added interest under G. L. c. 30, § 39K, was entered in the amount of $181,319.62.[1] On appeal, BHA argues that (1) the plaintiff did not sustain its burden of showing substantial performance of the contract and a good faith effort to perform fully, see *Andre* v. *Maquire,* 305 Mass. 515, 516 (1940), and (2) that interest under G. L. c. 30, § 39K, may not be awarded on a judgment in quantum meruit.

It is necessary only to summarize the facts generally. In its original form, the contract called for sandblasting of surfaces, installation of stainless steel flashings and corner beads and application of pressure applied cement plaster. Before the contract was signed on May 18, 1979, Acme proposed and BHA representatives orally agreed to the substitution of metal lath for sandblasting and zinc for stainless steel beads. Acme subsequently received written notice to begin work on July 16. Informed by BHA that a change order was in progress, Acme began to install the metal lath on July 18. By letter dated August 10, 1979, Acme's preparatory work was rejected on account of eight specified alleged deficiencies. On September 10, a revised change order specified the substitution of "corner beads" instead of the more general term "beads." As a result, between September 17 and October 9, 1979, some zinc materials already in place had to be replaced with stainless steel. The cement plaster was applied in substantial part by hand troweling instead of by machine.

There were disputes between the parties about the specifications, methods used, thickness of mortar required and extra

---

[1] The amended judgment recited that interest was computed on a judgment for the plaintiff of $112,703.84. This figure, $500 more than the original judgment, appears to be a typographical error. Neither party adverts to the discrepancy.

costs. BHA authorities repeatedly faulted Acme's work but never issued a formal stop order or paid any of Acme's requisitions. However, on January 21, 1980, BHA's field inspector reported in writing to BHA: "It appears that the contractor has completed contract 100%." On January 30, 1980, Acme submitted a final bill for $124,251.48.

1. *The judge's findings of fact.* At the threshold, BHA complains that the judge's findings lack particularity and are, therefore, insufficient to support his conclusion that Acme substantially performed under the contract and made a good faith effort to perform fully. "Rule 52(a) [365 Mass. 816 (1974)] of the Massachusetts Rules of Civil Procedure does not require extensive detail, but does impose on the judge an independent duty to articulate the essential grounds of his decision. Its purpose is to ensure that the judge 'may be satisfied that he has dealt fully and properly with all the issues' and that 'the parties involved and this court on appeal may be fully informed as to the bases of his decision'" (citation and footnote omitted). *Schrottman* v. *Barnicle,* 386 Mass. 627, 638-639 (1982), quoting from *Markell* v. *Sidney B. Pfeifer Foundation, Inc.,* 9 Mass. App. Ct. 412, 416 (1980). Here, although not in the detail which is desirable, we think the judge's findings substantially fulfil those purposes. We may not set those findings aside unless they are clearly erroneous. Mass.R.Civ.P. 52(a). "The question for the appellate court under Rule 52(a) is not whether it would have made the findings the trial court did, but whether 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.'" *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 161 (1977), quoting from *Guzman* v. *Pichirilo,* 369 U.S. 698, 702-703 (1962).

In determining whether Acme substantially performed under the contract, the judge's task was to examine the evidence "in reference to the entire contract and what has been done and omitted to be done under it." *Glazer* v. *Schwartz,* 276 Mass. 54, 57 (1931). See *Albre Marble & Tile Co.* v. *Goverman,* 353 Mass. 546, 550 (1968). The judge found that the bead, lath, and cement plaster work was done in a good and workman-

like manner[2] and achieved the contracted-for results in spite of conditions which hampered Acme's ability to conform to the contract. As to the latter, the judge gave specific examples of the ways performance was hindered by BHA.[3] His general finding that the contract was substantially performed as it related to the cement plastering requirements of the contract has ample support in the evidence.[4]

The BHA next argues that the "unilateral" decision to abandon the application by machine is inconsistent with the judge's finding that Acme made a good faith effort to perform fully. Generally, *"[i]n the absence of special exculpating circumstances* [emphasis supplied] an intentional departure from the precise requirements of the contract is not consistent with good faith in the endeavor fully to perform it, and unless such

---

[2] He also found that some of the caulking was defective and credited BHA with $2,500.00 on that account.

[3] He found "Acme performed its work in spite of incomplete specifications (metal lath, attachment of beads), job conditions (tieing corner beads, using 3/4" nails) and BHA's order (installation of top bead and extra cement plaster) . . . . [The] BHA was dilatory in processing the change order. The Chief Inspector for BHA ordered Acme at one period to install the top bead in a manner which unquestionably required additional cement plaster to be used, but BHA refused to entertain a change order for that work . . . . [At another time] BHA ordered Acme to use long nails — even though long nails were not called for in the specifications and even though the evidence showed that the application of long nails would have resulted in shattering the mortar joint which would result in improper fastening. This court finds that Acme submitted, from time to time, requisitions in accordance with the contract and that BHA refused to process these requisitions and that at such times even though Acme requested a written decision re the dispute, BHA's Contract Officer never responded as required by the General Conditions. This court finds the BHA's conduct was arbitrary and capricious and unreasonably hindered Acme in completing its work. See *Farina Brothers. Co., Inc. v. Commonwealth,* 357 Mass. 131, 138-139 [1970]."

[4] There was evidence of the following. The intended waterproofing was as well achieved by hand troweling as it would have been by machine application. BHA's field inspector approved this method at the site. Though another BHA representative later expressed in writing disapproval of this method, that official never ordered Acme to stop using it. The judge found that the cement plaster set properly, did not crack and, even with the possibility of defective caulking, see note 2, *supra,* achieved the results required by the defendant.

departure is so trifling as to fall within the rule *de minimis*, it bars all recovery." *Andre* v. *Maquire,* 305 Mass. at 516. BHA contends that Acme intentionally decided to make a change that was not de minimis. However, the judge's conclusion as to good faith is clearly based on findings of exculpatory circumstances which have firm bases in the evidence. The judge could have concluded that the arbitrary and capricious behavior of BHA, the serious lack of communication from BHA to Acme, the approval of BHA's field supervisor and the failure of BHA to issue a stop order excused the deviation in the method of application of the cement plaster. Compare *Morello* v. *Levakis,* 293 Mass. 450, 453 (1936) ("[A] rule of law which would compel a court to find bad faith because of a departure of this kind, which could be found to have been necessary to the doing of a proper job, would be too rigid and unyielding for the practical accomplishment of justice").[5]

Finally, BHA argues that the judge erred when in his findings he took "judicial notice that [at the time the work was being done by Acme] BHA was in a state of turmoil and disarray," and by further finding that "it would therefore appear that any of the problems created on this subject were attributable to the foregoing characterizations of the problems besetting BHA." There was evidence that BHA was placed in receivership in February, 1980, and that for a year or two prior thereto a court appointed master had been in some degree of charge. A review of the transcript indicates that the judge was probably only taking judicial notice of the receivership proceedings in the Superior Court. Cf. *Michaud* v. *Sheriff of Essex County,* 390 Mass. 523, 535 (1983); *Allston Fin. Co.* v. *Hanover Ins. Co.,* 18 Mass. App. Ct. 96, 98 (1984). See generally Liacos, Massachusetts Evidence 29-34 (5th ed. 1981 & Supp. 1985). In any event, there was ample evidence, including that with respect to the administration of the contract in question, to support

---

[5] BHA's reliance on G. L. c. 30, § 39I, is misplaced. That statute provides criminal penalties for proscribed "wilful and substantial deviation[s]" from contract terms. It has no application separate from the principles which govern recovery on quantum meruit which we have discussed.

a finding that BHA was at relevant times in "a state of turmoil and disarray" which contributed to Acme's difficulties in performing under the contract.

In summary, our review of the evidence and of the judge's findings does not convince us that a mistake has been committed. The judge applied the correct rules of law to the facts found by him.

2. *The award of interest under G. L. c. 30, § 39K.*[6] BHA argues that the interest provisions of § 39K have no application where recovery is based not on the contract but on quantum meruit. Acme defends the award of interest in the amended judgment on that part of the statute which calls for payment of "the entire balance due on the contract" when "(b) the contractor substantially completes the work and the awarding authority takes possession for occupancy." Acme's brief one-paragraph argument in support of its position is particularly unhelpful.

---

[6] Section 39K, as amended by St. 1971, c. 887, §§ 1, 2, provides, in part: "Every contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building . . . shall contain the following paragraph: — Within fifteen days (twenty-four days in the case of the commonwealth) after receipt from the contractor . . . of a periodic estimate requesting payment of the amount due for the preceding month, the awarding authority will make a periodic payment . . . less (1) a retention based on its estimate of the fair value of its claims against the contractor and less (2) a retention for direct payments to subcontractors . . . and less (3) a retention not exceeding five per cent of the approved amount of the periodic payment. After the receipt of a periodic estimate requesting final payment and within sixty-five days after (a) the contractor fully completes the work or substantially completes the work so that the value of the work remaining to be done is, in the estimate of the awarding authority, less than one per cent of the original contract price, or (b) the contractor substantially completes the work and the awarding authority takes possession for occupancy, whichever occurs first, the awarding authority shall pay the contractor the entire balance due on the contract less (1) a retention based on its estimate of the fair value of its claims against the contractor and of the cost of completing the incomplete and unsatisfactory items of work and less (2) a retention for direct payments to subcontractors. . . . If the awarding authority fails to make payment as herein provided, there shall be added to each such payment daily interest at the rate of three percentage points above the rediscount rate then charged by the Federal Reserve Bank of Boston commencing on the first day after said payment is due and continuing until the payment is delivered or mailed to the contractor."

We apply familiar rules of statutory construction. " '[W]here the language of a statute is plain there is no room for speculation as to its meaning or its implication. The Legislature must be presumed to have meant what the words plainly say, and it also must be presumed that the Legislature knew preexisting law and the decisions of [the Supreme Judicial] [C]ourt.' *Condon* v. *Haitsma,* 325 Mass. 371, 373 (1950). Moreover, '[i]t is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation.' *Prudential Ins. Co. of America* v. *Boston,* 369 Mass. 542, 547 (1976)." *First Natl. Bank* v. *Judge Baker Guidance Center,* 13 Mass. App. Ct. 144, 151 (1982). *Sterilite Corp.* v. *Continental Cas. Co.,* 20 Mass. App. Ct. 215, 217-218 (1985). A statute providing for penalty interest, see *D. Federico Co.* v. *New Bedford Redevelopment Authy.,* 9 Mass. App. Ct. 141, 145 (1980), should be strictly construed. "Sound principles of statutory construction dictate that interpretation of provisions having identical language be uniform." *Webster* v. *Board of Appeals of Reading,* 349 Mass. 17, 19 (1965).

The statutory provisions for periodic and final payments were, in accordance with § 39K, included as a part of the contract. Periodic payments by the awarding authority are for "the amount due for the preceding month." The provision of the statute (and, therefore the contract) upon which Acme relies requires final payment only when the "contractor substantially *completes the work*" and the payment must be of "the entire balance *due on the contract,*" less applicable retentions (emphasis supplied). Here, the judge found and it is undisputed on appeal that Acme was not entitled to recover on the contract but only on a theory of quantum meruit. In enacting § 39K in 1961, St. 1961, c. 627, § 1, the Legislature is presumed to have known the long settled rule in Massachusetts that a contractor cannot recover on the contract itself without "complete and strict performance of all its terms," and that an unexcused intentional deviation from contract terms bars recovery even on quantum meruit. See *Andre* v. *Maguire,* 305 Mass. at 516, citing, among other authorities, *Hayward* v. *Leonard,* 7 Pick.

180 (1828), and *Sipley* v. *Stickney,* 190 Mass. 43, 46 (1906). Had the Legislature intended to provide for recovery of penalty interest where the payment was for work not done under the terms of the contract (by implication, the retentions allowed under § 39K for incomplete and unsatisfactory work lead to the conclusion that payment for substantial completion of the work is for work done in accordance with the contract), it could simply have done so.[7] We think the apparent purpose of § 39K is to provide a contractor with reasonably current payments for work done in accordance with the contract. Cf. *D. Federico Co.* v. *New Bedford Redevelopment Authy.,* 9 Mass. App. Ct. at 145 (construing substantially similar provisions of G. L. c. 30, § 39G). The provision for final payment, less retentions, upon substantial completion of the work *and* "possession for occupancy" by the awarding authority strikes an obvious equitable balance. The requirements of prompt payment and penalty interest provide incentives for full compliance by the contractor with the terms of the contract. The construction urged by Acme could well have the opposite effect.

Our construction of § 39K is aided by the provisions of G. L. c. 30, § 39G, which deal with periodic and final payments for public works projects other than those involving building work covered by § 39K. Section 39G was inserted by St. 1955, c. 597, and provided for payment to the contractor when the "contract has been substantially completed and the project has been opened to public use." Penalty interest for late payment was provided for in the same amount as is now called for in § 39K. Section 39G was rewritten in 1976, St. 1976, c. 506, § 1 (a subsequent amendment, St. 1978, c. 460, is not here relevant), and provides, in relevant part in the last paragraph: "Substantial completion, for the purposes of this section, shall mean either that *the work required by the contract* has been completed except for work having a contract price of less than one percent of the then adjusted total contract price,

---

[7] The language of § 39K was the result of a bill, 1961 Senate Bill No. 357, filed by the Associated General Contractors of Massachusetts, Inc.

*or* substantially all of *the work* has been completed and open to public use except for minor incomplete or unsatisfactory work items that do not materially impair the usefulness of the work required by the contract" (emphasis supplied). It seems clear to us that § 39G requires that the work for which payment is to be made is work in accordance with the terms of the contract. The definition of substantial completion was added to § 39G in 1976 and is by its terms limited to that section. However, as the language used in §§ 39G & 39K is substantially the same, the subjects are related and the purposes are identical, we construe the language of § 39K so as to create an harmonious whole. See *Butts* v. *Zoning Bd. of Appeals of Falmouth,* 18 Mass. App. Ct. 249, 252 (1984).

We conclude that it was error to add penalty interest under § 39K to the whole of a claim which was not, nor could it have been under the law of Massachusetts, determined to be properly asserted under the contract.

The amended judgment is vacated, and a new judgment is to be entered for the plaintiff in the amount of $112,203.84.

*So ordered.*