Sikora, J.
The plaintiffs, Bernard Wasserman and B. Wasserman and Associates (collectively “Wasserman”), brought this action against the defendants, Town of Bellingham (“Bellingham”), Town of Blackstone (“Blackstone"), and Massachusetts Electric Company (“Mass. Electric”), for damages sustained to their property resulting from flooding allegedly caused by the defendants’ negligence. Bellingham moves for summary judgment, asserting that judgment on Wasserman’s claim against it for negligently issuing a building permit is precluded under G.L.c. 258, §10(e). Blackstone also moves for summary judgment under G.L.c. 258, §§10(f) and (j) asserting that Wasserman’s claim is essentially one of negligent inspection or supervision which would not subject a municipality to liability. Mass. Electric moves for partial summary judgment seeking this court to limit its liability, if any, to the period prior to and subsequent to the installation of the utility pole which may have contributed to the flooding.
Upon consideration of the memoranda and arguments of counsel, Bellingham’s motion for summary judgment is ALLOWED, Blackstone’s motion for summary judgment is DENIED, and Mass. Electric’s motion for summary judgment is ALLOWED in part and DENIED in part in accordance with this decision.
BACKGROUND
Wasserman owns a commercial shopping center known as Alouette Plaza (“the Plaza”), which is located partially in the Town of Bellingham and partially in the Town of Blackstone. During the relevant time periods, tenants of the Plaza included Ames Department Store (“Ames”), a bank, and convenience stores. The property adjacent to the Plaza is owned by both Blackstone and Bellingham, with a particular parcel known as Turbesi Park owned entirely by Blackstone.
Beginning in late 1990, Wasserman became aware of water problems in the Plaza which occurred after heavy rainstorms. According to Wasserman, the water problems were “minor," although they required pumping on a periodic basis after heavy rains. According to Wasserman’s deposition testimony, the Plaza had to be pumped numerous times during 1991. During this period, however, the water problems consisted only of minor flooding and did not include any septic problems.
On November 12, 1992, the defendant Mass. Electric installed a utility pole on Diana Street in Blackstone which severed and blocked a drainage pipe near the Plaza that drains water from Turbesi Park. Mass. Electric removed the utility pole on February 1, 1993 and repaired the damaged drainage pipe. Wasserman alleges that the damage to the drainage pipe during this time period contributed to the severe flooding problems. Wasserman further contends that the drainage pipe remained clogged after the pole was removed, thus contributing to the continued flooding. In April of 1993, Mass. Electric asserts that the drainage pipe was unclosed. The plaintiff alleges, however, that the pipe was not fixed for several months after April of 1993.
Beginningin December of 1992, the water problems experienced at the Plaza intensified. Wasserman became aware of sewage backup in the Plaza, particularly on the side of the parking lot where Ames was located. The plaintiffs allege that because the surface water could not drain properly, the water came into the septic system and filled up the chambers, causing effluence to come back out into the parking lot. The improper surface water drainage, they contend, was due to the fact that Turbesi Park, a wetland area, was being illegally filled by Blackstone and by the fact that the severed Diana Street drainage pipe had clogged proper flow from the wetlands. The plaintiffs base this allegation in part on a letter from Frederick DeSimone (“DeSimone”) of Grove Hall Contracting, Inc. (“Grove Hall”), the company which performed some of the pumpingin late 1992 through early 1993. When the intensified flooding occurred, Ames hired Grove Hall to pump the parking lot and to assess why the flooding had begun to *41 occur. According to DeSimone, whom the plaintiffs intend to call as a witness at trial, although the dumping in the wetlands was a contributing factor to the flooding, it was not the root cause of the problem. After further investigation, DeSimone concluded that the flooding was directly related to the problems with the severed drainage pipe. At some time between April and December of 1993, once the drainage pipe was repaired and subsequently unclogged, the wetlands began to drain. DeSimone expressed an opinion, however, that the fill in the wetlands had compromised its ability to drain and suggested that the fill be removed in order to resolve the flooding problems.
From December of 1992 until sometime in late 1993, the plaintiffs experienced repeated problems of effluence back-up in the Plaza, requiring frequent pumping at considerable expense. In February of 1993, the Corps of Engineers of the New England Division of the Department of the Army (the “Corps”) sent a letter to Blackstone concerning the illegal dumping of fill in Turbesi Park. The letter indicated that the Corps was conducting an investigation into the dumping as it appeared from the Corps’ records that Blackstone had- not applied for the necessary permit for placing fill in wetland areas.[1] In a letter to the Corps dated June 8, 1993, Blackstone acknowledged responsibility for the removal of the fill which had been placed in Turbesi Park. The plaintiffs contend that this acknowledgment is an admission by. Blackstone that it had done the illegal dumping. Blackstone did, in fact, remove fill from part or all of Turbesi Park. Subsequently, the Corps indicated that “[d]ue to the amount of fill in the case and to priorities, the Corps is not pursuing the ease at this time.”
Wasserman filed this action seeking damages against Bellingham, Blackstone, and Mass. Electric, alleging that the negligence of each contributed to the serious flooding problems experienced at the Plaza.[2]
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law based upon review of the summary judgment record. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Hie moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If a case only involves a question of law, a court will grant summary judgment to the party entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
I. Bellingham’s Motion for Summary Judgment
The plaintiffs’ amended complaint alleges negligence on the part of Bellingham in allowing the issuance of building permits in the late 1980s for the construction of new homes on land adjacent to Alouette Plaza. This negligence, they contend, permitted the filling of wetlands which changed the drainage in the area, contributing to the serious flooding onto the Plaza. Specifically, Wasserman alleges that Bellingham’s issuance of a building permit for the construction of a duplex home on land behind the Plaza, on Diana Street, gives rise to liability because it did not investigate whether the area was a wetland prior to the issuance of the permit. This negligence, and the subsequent filling of the wetland area to accomplish construction, caused the water in the ground to migrate onto the Plaza and contribute to the extensive flooding suffered by the plaintiffs. No other negligence claim or cause of action has been asserted against Bellingham.
Bellingham asserts in its motion for summary judgment that, even if the plaintiffs’ allegations are true, recovery is precluded under the statutory “public duty rule.” In Massachusetts, the “public duty rule” bars a negligence claim against a municipality unless the plaintiff demonstrates that the defendant owed him a special duty different from the duly owed to the public in general. See Dinsky v. Framingham, 386 Mass. 801, 810 (1982). Chapter 258 of Massachusetts General Laws, the Massachusetts Tort Claims Act (“MTCA”), permits a plaintiff to recover from a public employer “for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment. ..” G.L.c. 258, §2 (1988 ed.). The addition of Section 10(e) in 1993, however, expressly exempts from this provision “any claim based upon the issuance, denial, suspension or revocation or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization . . .’’ G.L.c. 258, § 10(e) (1988 ed. & Supp. 1993).[3] Bellingham argues that it is entitled to judgment as a matter of law, even if all of plaintiffs’ allegations are true, because the claim against it is one based upon the issuance of a permit from which a municipality is expressly exempt from liability under § 10(e).
In its opposition to Bellingham’s motion for summary judgment, Wasserman implies that as § 10(e) has yet to be construed by the courts, summary judgment in favor of Bellingham is inappropriate. Further, *42 Wasserman maintains that Bellingham’s negligence arises not from the issuance of a building permit but rather from the failure to properly investigate the area in question prior to the issuance of the permit. In this case, the plaintiffs allege that had Bellingham properly investigated the area, it would have discovered that it was a wetland. Arguing that a town has a duty when it undertakes a discretionary function such as this, Wasserman contends that Bellingham could clearly foresee that any negligence on its part would cause flooding to the surrounding area.
Regardless of the phraseology, the gravamen of Wasserman’s complaint against Bellingham is that it negligently issued a building permit. Section 10(e) of the MTCA addresses the issue whether a municipality can be held liable for “any claim based upon the issuance... [of] any permit, license, certificate, approval, order or similar authorization.” G.L.c. 258, §10(e). “The duty of statutory interpretation is for the courts.” Casey v. Massachusetts Electric Co., 392 Mass. 876, 879 (1984), quoting Cleary v. Cardullo’s Inc., 347 Mass. 337, 344 (1964). Where statutory language is clear and unambiguous, it is presumed that the Legislature intended its plain meaning. See Acme Plastering Co. v. Boston Housing Authority, 21 Mass.App.Ct. 669, 675, rev. denied 397 Mass. 1103 (1986), citing Condon v. Haitsma, 325 Mass. 371, 373 (1950). Absent any ambiguity, the function of the courts is to construe a statute as written, appropriately according the language its plain meaning. Prudential Ins. Co. of America v. Boston, 369 Mass. 542, 547 (1976).
In determining whether Bellingham’s alleged negligence in issuing a building permit subjects a municipality to liability, it is helpful to look at the Legislature’s intent in enacting § 10(e). Prior to its enactment, courts adhered to the “public duty rule” as part of the common law: a municipality could not be held liable for actions unless the plaintiff could show that he was owed a special duty of care different from the one owed to the public at large. See Lawrence v. Cambridge, 422 Mass. 406, 408 (1996). Believing that the “public duty rule” was inconsistent with the MTCA and had resulted in dichotomous results, in Jean W. v. Commonwealth, 414 Mass. 496 (1993), the SJC stated its “intent(ion) to abolish the public duty rule at the first available opportunity after the conclusion of the 1993 session of the Legislature.” Id. at 499. Thereafter, the Legislature enacted the statutory public duty rule as codified in G.L.c. 258., §10(e).
Where the language of a statute is unambiguous, it must be construed in accordance with its plain meaning. See Acme Plastering, 21 Mass.App.Ct. at 675 (citations omitted). Here, the language of§10(e) is clear and unambiguous: the provisions of c. 258, §§1 through 8, which permit municipal liability in certain negligence actions, do not apply to any action based upon the issuance of a permit. Whether the negligence arises out of a failure to investigate the propriety of the permit’s issuance or out of negligence in the issuance itself, the language of the statute clearly proscribes municipal liability. As the plaintiffs do not assert any other negligence theory or cause of action, Bellingham is entitled to judgment in its favor as a matter of law as to Counts II and V of plaintiffs’ amended complaint.
II. Blackstone’s Motion for Summary Judgment
In support of its motion for summary judgment as to Counts III and V of the complaint, Blackstone argues that, to the extent the plaintiffs’ allege negligence, it is immune from liability under c. 258, §§10(f) and (j).[4] The defendant asserts that Wasserman’s claims ofnegligence can arise in two ways: first, in failing adequately to inspect Turbesi Park to determine whether the alleged filling was illegal; and second, in failing adequately to protect, guard, or prevent others from dumping illegally in Turbesi Park. Under either theory, Blackstone contends it is shielded from liability under the MTCA.
Wasserman asserts, however, that its claims against Blackstone do not arise out of negligent inspection or supervision of Turbesi Park. Rather, the plaintiffs allege that the Town of Blackstone itself is responsible for the illegal dumping for which no liability exclusion provision applies. Wasserman references a letter from the Town of Blackstone, asserting that Blackstone admits performing the illegal dumping which took place in Turbesi Park. To the contrary, however, after examination of all correspondence attached to the motions for summary judgment, it is clear that while Blackstone acknowledges financial responsibility for the clean-up, it denies knowledge or performance of the dumping itself.
Regardless of which theory Wasserman intends to pursue at trial, I find that there are genuine issues of material fact which preclude summary judgment in Blackstone’s favor. I note that, to the extent Wasserman is alleging negligent supervision or inspection as a theory of liability, Blackstone properly raises as a defense the fact that liability may be precluded under c. 258 as the town was arguably performing a discretionary function. I decline to grant summary judgment because the underlying facts and circumstances will need to be heard by a trier of fact to determine whether Blackstone itself performed the dumping. At the same time, I have reservations about the plaintiffs’ ability to present evidence that Blackstone performed the illegal dumping. Discovery has closed in this case, and based upon the summary judgment record, Wasserman has no evidence, other than the Blackstone letter to indicate the town’s involvement in the dumping. Notwithstanding this skepticism, I must view the evidence in the light most favorable to Wasserman, the nonmoving party, and deny Blackstone’s motion for summary judgment.[5]
III. Mass. Electric’s Motion for Summary Judgment
Mass. Electric moves for summary judgment in an effort to limit the time frame for which it may be held liable. Specifically, Mass. Electric asserts that the *43 earliest point at which it could be liable for the flood damage, if at all, was November 12, 1992, the date on which it installed the utility pole, and that the latest point at which it could be liable was April 30, 1993 when the repaired drainage pipe was unclogged. Although Wasserman’s opposition to Mass. Electric’s motion for summary judgment does not address the claims prior to November 12, 1992, the plaintiffs contend that the clogging of the drainage pipe was not fixed until many months after April 1993.
As Wasserman has not alleged, nor could he on the facts of the present record, that Mass. Electric is liable for any flood damage prior to November 12, 1992, the motion for summary judgment for that time period is allowed. As a matter of law, however, I find that genuine issues of material fact exist regarding whether the drainage pipe was sufficiently unclogged in April of 1993 so as to cut off Mass. Electric’s liability for any subsequent damage. The underlying facts and circumstances surrounding the installation and removal of the utility pole, and the subsequent unclogging of the drainage pipe, need to be presented to a trier of fact in order to determine Mass. Electric’s liability, if any. As Mass. Electric cannot show as a matter of law that it is entitled to judgment as to liability after April of 1993, I deny so much of the motion for summary judgment as encompasses that time period.
ORDER
Based upon the foregoing reasons, it is hereby ORDERED that defendant Bellingham’s motion for summary judgment be ALLOWED, that defendant Blackstone’s motion for summary judgment be DENIED, and that defendant Mass. Electric’s motion for summary judgment be ALLOWED as to all claims and damages sustained by the plaintiffs before November 12, 1992; and DENIED as to all claims and damages sustained by the plaintiffs after April 30, 1993.

 As indicated in its letter, the filling of wetlands without a permit from the Corps is a violation of the Clean Water Act, codified in 33 U.S.C. §1344. There is no dispute that Blackstone did not apply for or otherwise obtain a permit to place fill in Turbesi Park. As discussed in part II, infra, however, there is a dispute as to whether Blackstone itself placed fill in Turbesi Park or merely allowed others to do so.

 According to the tracking order in this action, discovery was to have been completed in June of 1996.

 The constitutionality of this amendment was upheld in Carleton v. Framingham, 418 Mass. 623, 627-28 (1994).

 Sections 10(f) and (j) preclude municipal liability in certain circumstances:
"The provisions of Sections one to eight, inclusive, shall not apply to: — . . .
(f) any claim based upon the failure to inspect, or an inadequate or negligent inspection, of any property, real or personal, to determine whether the property complies with or violates any law, regulation, ordinance or code, or contains a hazard to health or safety, except as otherwise provided in clause (1) of subparagraph (j) . . .
(j) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer. This exclusion shall not apply to:
(1) any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances. Apermit, certificate or report of findings of an investigation or inspection shall not constitute such assurances of safety or assistance; and . . .
(3) any claim based on negligent maintenance of public property...”
G.L.c. 258, §§ 10(e) and (j).

 In addition to its MTCA argument, in support of its motion for summary judgment Blackstone asserts that Wasserman will be unable at trial to produce an expert who will testify as to causation between any purported negligence on Blackstone’s behalf and the resultant flooding. Blackstone contends that DeSimone, the Grove Hall Contracting, Inc. representative, is not qualified to render an expert opinion on causation because he lacks the education and experience to make such a determination. As Wasserman has not indicated that any other expert will be called at trial, Blackstone asserts that the plaintiffs will not be able to present evidence at trial on the necessary element of causation.
The qualifications of a witness to testify as an expert and render an expert opinion are within the sound discretion of the trial judge. Kapp v. Ballantine, 380 Mass. 186, 192 (1980). As such, it is inappropriate at this stage to pass on the qualifications of a witness to render an expert opinion, and, in my discretion, I decline to allow summary judgment on these grounds. -¿f-