MARY G. CARLETON, administratrix,[1] *vs.* TOWN OF
FRAMINGHAM (and a companion case[2]).

No. 91-P-1311.

Middlesex. March 15, 1993. - June 29, 1993.

Present: ARMSTRONG, BROWN, & PORADA, JJ.

Further appellate review granted, 416 Mass. 1102 (1993).

*Massachusetts Tort Claims Act. Negligence*, Police, Municipality. *Munic-*
*ipal Corporations*, Liability for tort, Officers and agents, Police, Duty
to prevent harm. *Police*, Negligence. *Motor Vehicle*, Operating under
the influence.

The public duty rule did not bar actions against a town on claims for
wrongful death arising from the alleged negligent failure of the police
officer to prevent an intoxicated motorist from operating an automobile
on the highway. [689-690]

Although the discretionary function exception contained in § 10 (*b*) of
G. L. c. 258, the Massachusetts Tort Claims Act, protected a town
from liability for the alleged negligent failure of its police officer to
initiate a threshold inquiry to determine if a crime has been or is being
committed, the exception was not applicable to the officer's acts or
omissions in violation of his duty to place in protective custody one
whom he knew to be intoxicated and who he had probable cause to
believe would imminently drive on the highway. [690-691]

At the trial of two claims for wrongful death arising from a head-on colli-
sion between the decedents' vehicle and an automobile operated by an
intoxicated motorist, the evidence was sufficient as matter of law for the
jury to find that a police officer of the defendant town was negligent in
failing to place the offending driver in custody shortly before the acci-
dent, when he observed him obviously drunk in a doughnut shop in the
early morning hours and, in the circumstances, should have foreseen
that he would drive. [691-692]

At a civil trial, certain challenged language in the judge's supplementary
instruction to the jury, given in the context of a current statement of
the plaintiffs' burden of proof, contained no error. [692-693]

Where wrongful death claims were submitted to a jury on at least one
theory that would support a verdict for the plaintiffs and another that
would not, and the record did not reveal the theory on which the jury

[1] Of the estate of Lynn Marie Carleton.

[2] Nancy Kelley, administratrix of the estate of Arthur Kelley, Jr., *vs.*
Town of Framingham.

relied, the verdicts for the plaintiffs could not stand and a new trial was required. [693-695]

CIVIL ACTIONS commenced in the Superior Court Department on July 6, 1988, and October 14, 1988, respectively.

The cases were consolidated for trial and were tried before *Richard S. Kelley*, J.

*Philip B. Benjamin*, Special Assistant Town Counsel (*Aaron K. Bikofsy*, Town Counsel, with him) for the defendant.

*Albert B. Zabin* for Mary G. Carleton, administratrix.

*Joseph H. Burke, Jr.*, for Nancy Kelley, administratrix.

PORADA, J. The plaintiffs filed wrongful death actions in the Superior Court against the town of Framingham following an automobile accident in which the plaintiffs' decedents were killed when a car operated by a drunk driver, Garret Nagle, collided head-on with the decedents' vehicle. The plaintiffs claimed that the town's police officer, Charles Cooper, who had talked to Nagle at a Dunkin Donuts store in Framingham at 1:50 A.M. just prior to the accident, was negligent in failing to conduct a threshold inquiry of Nagle to ascertain whether he was driving a car, in failing to place Nagle in protective custody, and in lying in wait across the street from the Dunkin Donuts store until Nagle got into his car and that each of these acts was the proximate cause of the death of the plaintiffs' decedents. In a special verdict, the jury answered in favor of the plaintiffs on all three theories of negligence and found that the negligence of the officer was the proximate cause of the death of the plaintiffs' decedents. On appeal, the defendant argues that liability is barred by the public duty rule and by the discretionary function exception under the Massachusetts Tort Claims Act. The defendant also argues that the evidence was insufficient as matter of law to establish the officer's negligence on a theory of failure to conduct a threshold inquiry or to place the defendant in protective custody and that the trial judge erred in instructing the jury that the town had a duty to protect the

decedents from the wrongful acts of third persons. We reverse the judgments and order a new trial.

We summarize those facts pertinent to this decision which a jury could have inferred from the evidence. Police Officer Edward McGilvray of the Natick police department stopped at the Dunkin Donuts at the intersection of Route 30 and Speen Street in Framingham, at 1:50 A.M. on November 10, 1985. In the store he observed an individual, later determined to be Nagle, walking with a staggering gait and fumbling with his keys at the counter. Officer McGilvray assisted Nagle by holding him up by the shoulder or arm to keep him steady. McGilvray then returned to his cruiser with the intention of contacting the Framingham police, because he believed Nagle was intoxicated and should be checked out by the Framingham police department. However, at that moment, Officer Cooper of the Framingham police department arrived at the Dunkin Donuts store. Officer McGilvray informed Officer Cooper that the patron at the counter, Nagle, was "legless." Upon entering the store, Officer Cooper confronted Nagle and observed that Nagle had bloodshot eyes and a heavy odor of alcohol on his breath and was extremely unsteady on his feet. Officer Cooper, recognizing that Nagle was drunk, said to him, "I hope you're not driving," to which Nagle replied, "No, I'm with a friend."

Officer Cooper observed Nagle leave the store, speak with Officer McGilvray, and walk towards the Red Roof Inn, located nearby. Officer Cooper then spoke with Officer McGilvray and learned that Nagle had told him that he was staying at the Red Roof Inn, located adjacent to Dunkin Donuts. Officer Cooper saw no inconsistency in the differing explanations given by Nagle and accepted Nagle's word at face value although he was unable to determine whether Nagle was in fact telling the truth. In any event, he conducted no further investigation of Nagle's story. Neither officer saw Nagle enter or exit a vehicle during his observation of him.

An employee of Dunkin Donuts, John Dougall, saw Nagle leave the store after speaking with the two police officers. He observed Nagle sitting on the fence between Dunkin Donuts

and the Red Roof Inn for between five and twenty minutes. He also saw Officer Cooper drive his cruiser across the street and park in the parking lot of the Bicknell pool store. During the time Nagle sat on the fence, Officer Cooper's cruiser remained parked across the street with its parking lights on. Dougall then saw Nagle walk to a trash receptacle outside the Dunkin Donuts store. After losing sight of him for a moment, he then saw a white vehicle (Nagle's) pull out of the Dunkin Donuts parking lot onto the street and seconds later saw Officer Cooper's cruiser giving chase.

Nagle refused to stop and instead accelerated his speed. After giving chase for about one mile, Officer Cooper determined it was not safe to continue pursuit as his car was sliding all over the road (the road was wet), and so he slowed down and turned off his flashing lights. About one mile down the road, Nagle, while traveling at a speed of between sixty and sixty-five miles per hour, failed to negotiate a curve in the road and his vehicle struck the car in which the plaintiffs' decedents were traveling.

The Dunkin Donuts was located in a commercial area, the nearest residential area being about a mile away. There were no sidewalks in the vicinity of the Dunkin Donuts. It was unlikely that Nagle could have walked from any business establishment in that area at that time of the morning other than the Red Roof Inn.

We now address the issues raised by the defendant in this appeal.

1. *Public duty rule.* The defendant argues that the public duty rule bars liability in this case. The public duty rule is a judicially created doctrine that protects governmental units from liability unless an injured person seeking recovery can show that there was a breach of a duty owed to the individual himself and not merely to the public at large. *Jean W.* v. *Commonwealth*, 414 Mass. 496, 501 (1993). In *Irwin* v. *Ware*, 392 Mass. 745 (1985), a special relationship exception to the public duty rule was created. In that case, the Supreme Judicial Court held that a "special relationship" existed between a police officer who negligently failed to re-

move an intoxicated motorist from the highway and a member of the public who suffered injury as a result of that failure. The court based its conclusion, in part, on the statutory scheme that imposes upon a police officer a duty to remove drunk drivers from the highways. *Id.* at 754-763. Among these statutes, the court specifically referred (at 759) to G. L. c. 90, § 21, which authorizes a police officer to arrest any person who the officer has probable cause to believe has operated or is operating a motor vehicle on a way or in a place to which the public has access while under the influence of intoxicating liquor, as well as to G. L. c. 111B, § 8, as appearing in St. 1979, c. 597, § 1, which provides that "[a]ny person who is incapacitated may be assisted by a police officer with or without his consent to his residence, to a facility, or to a police station." While we recognize that the special relationship exception has been narrowly applied and has contributed to the view of a majority of the Supreme Judicial Court that the public duty rule should be abandoned in the near future, *Jean W.* v. *Commonwealth,* 414 Mass. at 499, the exception continues to have validity and is relevant in this case. Officer Cooper had the same obligation as the officer in *Irwin* v. *Ware, supra,* to enforce the statutes with respect to intoxicated operators of motor vehicles and could anticipate that his failure to take action to remove a drunk driver from the highway could result in immediate and foreseeable physical injury to a member of the public. Therefore, this action is not barred by the public duty rule.

2. *Discretionary function.* The plaintiffs' cases were predicated on Officer Cooper's failure to conduct a threshold inquiry of Nagle and failure to place Nagle in protective custody, which conduct the defendant contends falls within the scope of the discretionary function exception of the Massachusetts Tort Claims Act, G. L. c. 258, § 10(*b*). In deciding whether Officer Cooper's conduct falls within the discretionary function exemption, we must determine (1) whether Officer Cooper had any discretion to do or not to do what the plaintiffs claim caused their decedents' death and (2) whether the discretion which Officer Cooper had is the kind

of discretion for which § 10(*b*) provides immunity. *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992). There is no question that the decision whether to conduct a threshold inquiry to determine if a crime has been or is being committed involves discretion on the part of a police officer. It is also the type of activity which should be sheltered by the grant of immunity in order to insure that the police may make their decisions without fear of liability and to preserve the quality of the governmental function. See *Harry Stoller & Co.* v. *Lowell*, 412 Mass. at 142.

On the other hand, an officer's decision to place in protective custody a person whom he knows to be intoxicated and who he has probable cause to believe will imminently drive on the highway is a decision which, although involving discretion, should not be sheltered by immunity since the Legislature has already determined that such drivers should be removed from the highway by its enactment of G. L. c. 90, § 21; c. 111B, § 8; and c. 41, § 98. *Irwin* v. *Ware*, 392 Mass. at 753. See generally Annot., Failure to Restrain Drunk Driver as Ground of Liability of State or Local Government Unit or Officer, 48 A.L.R.4th 320 (1986); Note, Governmental Liability for Negligent Failure to Detain Drunk Drivers, 77 Cornell L. Rev. 873 (1992). Accordingly, any act or omission in violation of an officer's duty to arrest or place in protective custody a drunk driver under those statutes falls outside the scope of the discretionary function exception of § 10(*b*).

3. *Sufficiency of the evidence.* Having determined that the failure to conduct a threshold inquiry would not give rise to liability in this case because of the discretionary function exception, G. L. c. 258, § 10(*b*), we need only address whether the evidence was sufficient as matter of law for the jury to find that Officer Cooper was negligent in failing to place Nagle in protective custody. In order for liability to attach, the evidence must be sufficient for the fact finder to determine that Officer Cooper knew or should have known that Nagle was intoxicated and likely to drive, creating a risk of immediate and foreseeable physical injury to persons who could

not reasonably protect themselves. See *Irwin* v. *Ware*, 392 Mass. at 763-765.

Viewing the evidence in the light most favorable to the plaintiff, *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 7 n.1 (1983), we conclude that the evidence was sufficient to send the cases to the jury. There is no question that the officer knew Nagle was drunk. The more difficult issue is whether the evidence was sufficient to establish that he knew or should have known that he was likely to drive. There was no evidence that Officer Cooper at any time during his encounter with Nagle at the Dunkin Donuts store saw him enter or exit a car and there was no evidence that Officer Cooper knew the identity of any car to which Nagle had access or control. However, the fact finder could infer that Officer Cooper knew or should have known that Nagle was likely to drive based upon Nagle's inconsistent answers to Officers Cooper's and McGilvray's inquiries, the unlikelihood that Nagle would have walked to Dunkin Donuts at that hour in that location, and Nagle's sitting on the fence between Dunkin Donuts and the Red Roof Inn for five to twenty minutes while the officer sat in his cruiser with his parking lights on across the street from Dunkin Donuts. While the question is a close one, we cannot say that no rational view of the evidence would permit a jury to find that Officer Cooper was negligent in failing to place Nagle in protective custody and that his negligence was a proximate cause of the harm that befell the plaintiffs' decedents. *Irwin* v. *Ware*, 392 Mass. at 764-765.

4. *The judge's instructions.* The defendant argues that the judge erred in instructing the jury that "[i]t is for you to determine whether such conduct of a defendant consisted in a failure to guard against the wrongful and even criminal acts of a third person." The challenged language was given in a supplementary instruction preceded immediately by the judge's instruction that the plaintiffs had the burden of proving that it is more probable than not that harm of the same general kind which befell the plaintiffs' decedents was a reasonably foreseeable result of the officer's conduct. In this

context, we do not find the giving of this instruction to be error. See *Irwin* v. *Ware*, 392 Mass. at 756-757, 760-762.

5. *The verdict.* The case was submitted to the jury on special questions as follows:

> "1. Was the Town of Framingham, acting through Officer Charles Cooper, negligent in failing to conduct a threshold investigation of Garret Nagle?
>
> "2. Was the Town of Framingham, acting through Officer Charles Cooper, negligent in failing to place Garret Nagle in protective custody?
>
> "3. (a) Do you find that Officer Charles Cooper parked his cruiser in the Bicknell's parking lot, across the street from Dunkin Donuts on Route 30 in Framingham, Massachusetts, and waited for Garret Nagle?
>
> "(b) If your answer to Question No. 3(a) is "yes," was the Town of Framingham, acting through Officer Charles Cooper negligent in such conduct?
>
> "If the answer of the jury is "yes," to Question No.1 or Question No.2 or Question No.3(b), answer question No.4.
>
> . . .
>
> "4. Was the negligence of the Town of Framingham a proximate cause of the death of Lynn Marie Carleton and Arthur T. Kelley, Jr.? . . ."

To questions one through four, the jury responded in the affirmative. From this verdict, we are unable to determine which of the three courses of conduct, or whether all three, were considered the proximate cause of the death of plaintiffs' decedents. As noted, we have determined that Officer Cooper's failure to conduct a threshold inquiry is exempt from liability as a discretionary function under G. L. c. 258, § 10(*b*).

As for the officer's parking his cruiser across from the Dunkin Donuts and waiting for Nagle, as opposed to simply leaving the scene, we fail to see how as matter of law that

could be the proximate cause of the death of the decedents. On the other hand, if the jury found that Officer Cooper by parking and waiting for Nagle set in motion a high speed chase, which the officer knew or should have known would lead to injury, this would provide a separate basis for imposing liability. See *Boyer* v. *State*, 323 Md. 558, 583-588 (1991) (duty of care to persons in zone of danger may be violated if officer's action in commencing and continuing high speed pursuit of drunk driver set in motion a chain of events he knew or should have known would lead to injury). During the trial conflicting evidence was presented to the jury on this issue. Officer Cooper testified that after observing Nagle enter his car, he pulled in behind him at the Dunkin Donuts and left two car lengths between his cruiser and Nagle's car so that Nagle would not back up and hit his cruiser. An employee from Dunkin Donuts testified that Officer Cooper parked his cruiser across the street from Dunkin Donuts and pursued Nagle on the highway after Nagle pulled out of the Dunkin Donuts parking lot. The plaintiffs presented expert testimony that Officer Cooper was negligent in waiting for Nagle to drive and then attempting to apprehend him without blocking his exit, thus causing him to flee at a high rate of speed. If the jury adopted the expert's view, it would appear that Officer Cooper's conduct would not be protected by the discretionary function exception, see *Harry Stoller & Co.* v. *Lowell*, 412 Mass. at 141-146 (decision not to use sprinkler system in fighting a fire was against generally accepted firefighting practices and not a policy choice or planning decision), or by the public duty rule, see *Jean W.* v. *Commonwealth*, 414 Mass. at 514-515 (Wilkins, J., concurring) & 515-523 (O'Connor, J., concurring). However, we are unable to determine from the special questions, which referred only to Officer Nagle's lying in wait, whether the jury adopted this theory of liability.[3]

---

[3]During the trial, it would appear that the plaintiffs abandoned their claim that the officer was negligent in abandoning the pursuit of Nagle, but they did not, at least on the record presented to us, abandon their

As there is at least one theory (failing to place Nagle in protective custody) that would support a jury verdict for the plaintiffs in this case and another that would not and we cannot ascertain on which theory the jury relied, the verdict cannot stand. *Friese* v. *Boston Consol. Gas Co.*, 324 Mass. 623, 631 (1949). *Slate* v. *Bethlehem Steel Corp.*, 400 Mass. 378, 384 (1987). Accordingly, the judgments must be reversed and a new trial granted.

*So ordered.*

---

claim that the officer was negligent in the manner in which he sought to apprehend Nagle.