MARY G. CARLETON, administratrix,[1] *vs.* TOWN OF
FRAMINGHAM (and a companion case).[2]

Middlesex. May 3, 1994. - September 12, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Massachusetts Tort Claims Act. Negligence*, Police, Municipality. *Gov-
ernmental Immunity. Municipal Corporations*, Liability for tort, Of-
ficers and agents, Police. *Police*, Negligence. *Motor Vehicle*, Operating
under the influence. *Due Process of Law*, Taking of property, Retroac-
tive application of statute. *Constitutional Law*, Separation of powers.
*Statute*, Retroactive effect.

The discretionary function exception contained in § 10 (*b*) of G. L. c. 258,
the Massachusetts Tort Claims Act, was not applicable to a police of-
ficer's decision not to conduct a threshold investigation of a known in-
toxicated person outside a doughnut store where almost all the custom-
ers arrive by motor vehicle. [626-627]

Plaintiffs who secured judgments in 1991, subject to appellate review,
against a town on their common law negligence claims, arising from a
police officer's failure to prevent an intoxicated person from operating a
motor vehicle, were not denied due process of law in violation of Fed-
eral or State Constitutions by the application of St. 1993, c. 495, §§ 57
and 144, amending G. L. c. 258, § 10, to provide municipalities immu-
nity from such negligence claims including pending claims, and thus to
abolish retroactively the plaintiffs' claims against the town, where the
legislative action was reasonable. [629-634] LIACOS, C.J., concurring.

No principles of separation of powers expressed in art. 30 of the Declara-
tion of Rights of the Massachusetts Constitution were applicable to leg-
islative action affecting pending litigation. [634-635]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on July 6, 1988, and October 14, 1988, respectively.

---

[1]Of the estate of Lynn Marie Carleton.

[2]Nancy Kelley, administratrix of the estate of Arthur T. Kelley, Jr., *vs.*
Town of Framingham.

The cases were consolidated for trial and were tried before *Richard S. Kelley*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Philip B. Benjamin* (*Aaron K. Bikofsky*, Town Counsel, with him) for town of Framingham.

*Albert B. Zabin* for Mary G. Carleton.

*Joseph H. Burke, Jr.*, for Nancy Kelley.

*Scott Harshbarger*, Attorney General, *Michelle A. Kaczynski & Eleanor Coe Sinnott*, Assistant Attorneys General, for the Commonwealth, amicus curiae, submitted a brief.

WILKINS, J. Lynn Marie Carleton and Arthur T. Kelley, Jr., were killed on November 10, 1985, when a speeding motor vehicle operated by Garret Nagle, a drunk driver, failed to negotiate a curve on Route 30 in Wayland and struck the vehicle in which the plaintiffs' decedents were traveling. The plaintiffs' actions are based on the claim that Charles Cooper, a Framingham police officer, had been negligent in permitting Nagle to operate his motor vehicle after Cooper encountered Nagle at a Dunkin' Donuts store in Framingham shortly before the accident.

On January 11, 1991, a jury answered special questions, concluding that Cooper had been negligent in three respects: (1) he negligently failed to conduct a threshold investigation of Nagle; (2) he negligently failed to place Nagle in protective custody; and (3) he negligently parked his cruiser across the street and waited for Nagle to drive away from Dunkin' Donuts. Cooper, with his vehicle's lights flashing, pursued Nagle, but he abandoned the pursuit when Nagle did not stop. The jury found in answer to a fourth question that the town's negligence was a proximate cause of the deaths. The fourth question, agreed to by counsel, did not seek separate answers concerning causation with respect to each theory of negligence.

The town's appeal from February, 1991, judgments against it, each in the amount $100,000, raised a number of issues. In a June 29, 1993, opinion, which carefully and fully

sets forth the evidence on which liability could have been found, the Appeals Court held that the public duty rule did not bar recovery. Officer Cooper "had the same obligation as the officer in *Irwin* v. *Ware*, [392 Mass. 745 (1984)], to enforce the statutes with respect to intoxicated operators of motor vehicles and could anticipate that his failure to take action to remove a drunk driver from the highway could result in immediate and foreseeable physical injury to a member of the public." *Carleton* v. *Framingham*, 34 Mass. App. Ct. 686, 690 (1993). All the Justices participating in this opinion agree that at least a portion of the plaintiffs' claims are not barred by the common law public duty rule which they espouse.[3]

After deciding that the common law public duty did not provide immunity to the town, the Appeals Court went on to conclude that Cooper's decision not to conduct a threshold investigation of Nagle involved a discretionary function which, under G. L. c. 258, § 10 (*b*) (1992 ed.), could not be the basis of municipal liability. *Id.* at 690-691. It further concluded that, although the decision not to place Nagle in

---

[3]Chief Justice Liacos, Justice Greaney, and the author of this opinion agree with the Appeals Court that, for the purposes of the public duty rule, the circumstances of this case are not significantly different from the circumstances of *Irwin* v. *Ware*, 392 Mass. 745 (1984). In their opinion, the exception to the public duty rule of the kind identified in *Irwin* v. *Ware* justifies the jury's verdict based on each of the town's negligent acts, provided there is no other impediment to liability.

Based on their previously stated views, see *Jean W.* v. *Commonwealth*, 414 Mass. 496, 515 (1993) (O'Connor, J., concurring, with whom Nolan and Lynch, JJ., joined); *Cyran* v. *Ware*, 413 Mass. 452, 460 (1992) (O'Connor., J., concurring, with whom Nolan and Lynch, JJ., joined); *A.L.* v. *Commonwealth*, 402 Mass. 234, 253-254 (1988) (O'Connor, J., dissenting, with whom Lynch, J., joined); *Irwin* v. *Ware*, *supra* at 775-776 (Nolan, J., dissenting, with whom Lynch and O'Connor, JJ., joined), Justices Nolan, Lynch, and O'Connor conclude that the town was not liable for Officer Cooper's failure to investigate the circumstances, his failure to take Nagle into protective custody, or his failure to remove him from the highway, but that Cooper's staking out Nagle and pursuing him involved affirmative acts which would make the protection of the common law public duty rule that they favor unavailable to the town. See *Jean W.* v. *Commonwealth*, *supra* at 516-517; *Onofrio* v. *Department of Mental Health*, 408 Mass. 605, 610 (1990), *S.C.*, 411 Mass. 657 (1992).

protective custody was not the exercise of a discretionary function (*id.* at 691) and although the evidence was sufficient to support the finding of negligence at least on the protective custody theory of liability (*id.* at 691-692), there had to be a new trial. The Appeals Court reasoned that the general question on causation ("Was the negligence of the Town . . . a proximate cause of the death[s]?") could not support the verdicts because that court had rejected one theory on which negligence was found and could not "ascertain on which theory the jury relied." *Id.* at 694-695.

One month after the Appeals Court opinion was released we allowed the plaintiffs' application for further appellate review. The plaintiffs challenge the Appeals Court's holding that Officer Cooper's failure to conduct a threshold inquiry was a discretionary function within the meaning of G. L. c. 258, § 10 (*b*), and argue that, in any event, the generally stated proximate cause question was both agreed to by the parties and given to the jury without objection. Because of overriding, supervening action by the Legislature, we need not resolve these (and other) issues.

We do not wish, however, to leave the Appeals Court's discretionary function holding without comment. We agree with the Appeals Court that Officer Cooper was not exercising a discretionary function when he decided not to place Nagle in protective custody (*id.* at 691), but doubt that Cooper was engaged in a protected discretionary function when he decided not to conduct a threshold investigation of Nagle.

Discretionary acts and decisions warranting immunity must be based on considerations of planning and public policy. *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 146 (1992). Thus, in *Irwin* v. *Ware*, 392 Mass. 745, 753 (1984), this court said that "[n]o reasonable basis exists for arguing that a police officer is making a policy or planning judgment in deciding whether to remove from the roadways a driver who he knows is intoxicated."

The facts known to Officer Cooper indicate that he was not making a policy or planning judgment in deciding not to

inquire further of Nagle concerning his circumstances.[4] No policy or planning consideration concerning law enforcement objectives or resources appears to have been involved in Cooper's failure to pursue what Nagle's circumstances were and what Nagle was going to do. Our conclusion is not inconsistent with what we recently said in *Sena* v. *Commonwealth*, 417 Mass. 250, 256 (1994), which involved "decisions of law enforcement officers regarding whether, when, how, and whom to investigate, and whether and when to seek warrants for arrest." That case involved the conduct of police officers in investigating a criminal matter and in pursuing arrest warrants over the course of many months, not a police officer immediately confronted with a known drunk in a place where almost all the customers arrive by motor vehicle.

On January 14, 1994, after the case had been entered in this court on further review but before it was argued, St. 1993, c. 495, was approved. Among its provisions was an amendment (the amendment) of G. L. c. 258, § 10, made by § 57, which added to § 10 what in effect is a statutory public duty rule providing governmental immunity. The amendment lists various claims to which the provisions of G. L. c. 258, §§ 1 to 8, shall not apply. By St. 1993, c. 495, § 144, the amendment is said to "*apply to all claims* upon which a final judgment has not entered, or *as to which an appeal is pending* or the appeal period has not expired, and to all claims upon which suit is filed after the effective date of this

---

[4]Cooper knew that Nagle was drunk and would be a danger if he were driving. He said to Nagle that he hoped Nagle was not driving. Nagle replied that he was with a friend. Cooper testified that he did not consider whether the "friend" might also be drunk. Nor did Cooper inquire of Nagle whether he had car keys or a motor vehicle or where his friend was. He did admit that it was a police department policy that it was more important to stop a drunk from driving than to catch him after he had driven. Cooper also knew that it was bad practice and against policy to "stakeout a drunk to get him to get in the car to arrest him." He testified that he knew that it was a common practice of a drunk not to want to tell the police that he had been driving. Cooper also knew that Nagle had told a Natick police officer at the scene that he was staying within walking distance at a nearby inn, a story arguably inconsistent with the claim that he was with a friend.

act" (emphasis supplied). The amendment was no doubt adopted in response to opinions in *Jean W.* v. *Commonwealth*, 414 Mass. 496 (1993), which, taken collectively, indicated that, unless the Legislature acted to the contrary by the end of its next session, this court would abandon application of its common law public duty rule. *Id.* at 510-511 (Liacos, C.J., concurring); *id.* at 514 (Wilkins, J., concurring, joined by Abrams, J.); *id.* at 523-524 (Greaney, J., concurring).

Because of the legislative intention that the amendment apply to pending cases and claims, this court invited the parties in this case, and in five other cases on appeal to this court that might be affected by the amendment, to file supplemental briefs discussing the applicability of the amendment to their respective cases.[5] One question is whether the terms of the amendment apply to the particular claim or claims asserted so as to provide governmental immunity. A second question, which arises if the statute purports to provide governmental immunity, is whether the statute may constitutionally do so.[6]

The town argues that the plaintiffs' three theories of liability are foreclosed by the amendment. The town relies in part on G. L. c. 258, § 10 (*h*), which, it argues, bars claims based on the "failure to provide adequate police protection, prevent the commission of crimes, investigate, detect or solve crimes,

---

[5]These other cases, all argued at the May, 1994, sitting of this court are: *Judson* v. *Essex Agric. & Technical Inst., ante* 159, 164 (1994), *Salusti* v. *Watertown, ante* 202 (1994), and *Rinkaus* v. *Carver, ante* 573 (1994), in which the court concluded that the plaintiffs had no enforceable claim and thus the court did not have to consider the effect of the amendment; *Pallazola* v. *Foxborough, post* 639 (1994), released this day; and Bonnie W. *v.* Commonwealth (SJC-06328), which the court has under advisement.

[6]No party has argued to us that the amendment simply makes the Massachusetts Tort Claims Act inapplicable to claims described in the amendment, leaving this court free to apply common law principles to such claims, unfettered by statutory governmental immunity considerations. It appears reasonable to infer that the Legislature intended to immunize municipalities from liability for those claims described in the amendment. Nor has anyone challenged the lawfulness of the amendment as an outside section of a supplementary budget.

identify or apprehend criminals or suspects, arrest or detain suspects, or enforce any law," with exceptions not applicable here.[7] The plaintiffs do not discuss this clause (h) of § 10 in their briefs. The plaintiffs' theories of liability all depend on the alleged failure of the police to prevent Nagle's criminal conduct. In the words of clause (h), these claims are based on the "failure to provide adequate police protection," to "prevent the commission of crimes," and to "enforce [a] law." Aside from its exceptions (inapplicable here), clause (h) seeks to immunize a municipality when the criminal acts of a third person are a cause of a plaintiff's harm, and the police were negligent in not preventing that criminal conduct. We conclude that clause (h) purports to immunize the town in the circumstances of this case.

Because the amendment by its terms provides immunity in this case and because each justice participating in this opinion agrees, at the very least, that the plaintiffs are entitled to a new trial if the amendment may not constitutionally be applied to them, we reach the question whether the application of the amendment to existing causes of action violates the plaintiffs' State or Federal constitutional rights.

We consider first the principal constitutional claim: whether the application of the amendment retroactively to abrogate the plaintiffs' rights against the town denies them due process of law guaranteed by arts. 1, 10, and 12 of the Declaration of Rights of the Massachusetts Constitution and by the Fourteenth Amendment to the United States Constitution. Under each constitution the test is the reasonableness of the enactment determined on the circumstances of the

---

[7]The town also relies on § 10 (j) which, it argues, bars "any claim based on an act or failure to act to prevent . . . the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." The plaintiffs argue that Cooper "originally caused" the situation, at least Nagle's high speed departure from Dunkin' Donuts, and hence the immunity offered by § 10 (j) is inapplicable. We need not resolve this question, particularly the significance of the word "originally," because § 10 (h), if constitutional in the circumstances, provides immunity to the town.

particular case. It seems clear that the concept of due process embodied in the Constitution of the United States, and applied in decided cases, provides no greater protection to the plaintiffs than that provided by our Declaration of Rights. See *McClory* v. *Merkert*, 383 Mass. 883, 884 n.2 (1981) ("We recognize that in some situations the State Constitution may afford more protection against deprivation of property without due process than that guaranteed by the Fourteenth Amendment"); *Pinnick* v. *Cleary*, 360 Mass. 1, 14 n.8 (1971) (State and Federal due process provisions are "comparable"). It seems equally clear that retroactive Congressional abolition of a common law and State statutory tort cause of action does not violate Federal due process requirements. See *Hammond* v. *United States*, 786 F.2d 8, 11-12 (1st Cir. 1986). We, therefore, direct our attention to the requirements of the Constitution of the Commonwealth.

Opinions of this court have recognized that the Massachusetts Declaration of Rights might protect a common law tort claim from statutory abolition, but we have not had to decide whether the retroactive abolition of such a tort claim by statute would be unconstitutional. See *Mulvey* v. *Boston*, 197 Mass. 178, 183 (1908); *Hill* v. *Duncan*, 110 Mass. 238, 239 (1872) ("The interpretation insisted on would make it necessary to decide how far a common law right to recover damages — depending upon no statute, remedial or otherwise, for its existence — is to be treated as property within the meaning of the Declaration of Rights, and as such entitled to protection against a law which attempts to destroy it by retrospective action"). In the *Mulvey* case, the court held that, assuming that there were property rights in a tort claim entitled to constitutional protection, the application of the statute to an existing claim would not in the circumstances make it unconstitutional. In the *Hill* case, the court construed the statute to apply prospectively only.

We find no definitive answer to the State constitutional question in certain cases that have held that a statutorily created cause of action is not a "vested right" and, therefore, may properly be abolished retroactively. See *Pittsley* v.

*David*, 298 Mass. 552, 555 (1937). In such cases, the statutory right of recovery was established to discourage violations of the law by providing a punishment, and not to provide a remedy. *Id.* at 556-557. The plaintiffs' claims in this case appear to be remedial. More importantly, it is not at all apparent that the plaintiffs' claims against the town were created by statute. Chapter 258 concerns governmental immunity. G. L. c. 258, § 2 (1992 ed.). It does not create a cause of action against governmental units for the negligence of governmental employees. "[T]he abrogation of the doctrine of governmental immunity by the Act simply removed the defense of immunity in certain tort actions against the Commonwealth, municipalities and other governmental subdivisions. It did not create any new theory of liability for a municipality." *Dinsky* v. *Framingham*, 386 Mass. 801, 804 (1982).

Each plaintiff, however, had a judgment for $100,000 against the town, subject to appellate review, when the amendment became effective. They had expended the time, effort, and emotional energy involved in a jury trial. We decline to say that the Legislature may revoke such rights without even raising the question whether some form of property was being taken without due process of law.

Our approach to a claim that a statute violates due process protections by abolishing rights retroactively has called for a balancing of interests to determine whether the legislative action is unreasonable. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 189-190 (1978). In any evaluation of reasonableness, the plaintiffs have a heavy burden to meet, and we will recognize every rational presumption in favor of the legislation. *Id.* at 190. In our evaluation, we consider "the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights affected retroactively; and the extent or scope of the statutory effect or impact." *Leibovich* v. *Antonellis*, 410 Mass. 568, 577 (1991), and cases cited. See *St. Germaine* v. *Pendergast*, 416 Mass. 698, 702-703 (1993); *Nantucket Conservation Found.* v. *Russell Management,*

*Inc.*, 380 Mass. 212, 215-216 (1980). We discuss these separate considerations in turn.

We start with the nature of the plaintiffs' rights affected by the amendment. Although the plaintiffs' interests in the judgments on appeal are entitled to recognition as property rights, those interests are not as firmly established as rights of the kind that this court has protected against retroactive legislative abolition. The plaintiffs' interests, for example, are not established contractual rights as in *Frank Kumin Co.* v. *Marean*, 283 Mass. 332, 335 (1933) (statute could not repeal vested contractual property right),[8] nor do the plaintiffs have rights in a final judgment, as in *Casieri's Case*, 286 Mass. 50, 55-56 (1934) (due process and art. 30 separation of powers principles bar reopening agency decision). Moreover, the plaintiffs' rights are not based on the reliance of their decedents on the state of the law at the time of the accident, as can be the case of a defendant when a statute retroactively creates a cause of action. See *St. Germaine* v. *Pendergast*, *supra* at 703-704 (art. 10 violation to create liability retroactively where defendant could reasonably have relied on existing law at time he acted and no significant public interest served by creating liability). Cf. *Leibovich* v. *Antonellis*, *supra* at 578 (no reliance by defendant; statute retroactively creating parents' consortium rights not unconstitutional).

The plaintiffs' claims against the town rested on the uncharted and shifting pattern of the public duty rule and its exceptions. The facts upon which those claims were based, although close, were not precisely within any exception that a majority of this court had adopted at the time of the accident. A less than complete change of mind or personnel on this court could have rendered ineffective some or all theories

---

[8]More recently the Supreme Court has recognized that an impairment of contractual rights may be upheld if it is reasonable and necessary to serve an important public purpose. *United Trust Co. of N.Y.* v. *New Jersey*, 431 U.S. 1, 25 (1977). See *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. 416, 423 (1986); *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983).

on which the plaintiffs have relied. There is no support for a claim that a judicial fixing or changing of a common law tort principle would involve a deprivation of constitutionally protected rights. The strength or weakness of the plaintiffs' theories of liability is a relevant factor in determining the fairness of the application of the amendment to them.

We next consider the public interest that motivated the Legislature to enact the amendment. Protection of the public treasury is a legitimate governmental objective. See *Boston v. Keene Corp.*, 406 Mass. 301, 309 (1989); *Hallett v. Wrentham*, 398 Mass. 550, 558 (1986). The State has an interest in protecting governmental entities from the expenditure of time, effort, and money in the defense of claims barred by the amendment and in protecting against recovery on such claims, even if recovery is limited to $100,000 for each plaintiff. The amendment also assures that persons injured before and after its enactment will be treated equally (within the proper reach, as we shall see, of the Legislature's power under art. 30 of the Massachusetts Declaration of Rights). Moreover, the amendment purports to clarify rights and obligations in an area of the law marked by uncertainty, a worthy legislative goal, even if it may be that the amendment itself will be shown to generate its own uncertainties. Although the amendment provides retroactive relief to the Commonwealth and its political subdivisions and is thereby self-serving, the legislative judgment that the public purse must be protected in the circumstances carries substantial weight.[9]'

Turning to the third factor in the determination of the reasonableness of the retroactive application of the amendment, we consider the extent to which the amendment abrogates preexisting rights by looking at the degree to which the statute altered the legal incidents of the plaintiffs' claims arising from the preenactment accident. See Hochman, The Su-

---

[9]We have no indication of the extent to which claims retroactively barred by the amendment may have been covered by liability insurance acquired by governmental entities.

preme Court and the Constitutionality of Retroactive Legis-
lation, 73 Harv. L. Rev. 692, 712 (1960). We have already
noted the uncertainty of the validity of those claims under
the tort law of the Commonwealth existing at the time of the
accident. We have also observed that the plaintiffs' decedents
did not act in reliance on the existence of a particular rule of
law concerning governmental liability. In addition, the
amendment did not abolish all rights that the plaintiffs have
with respect to the harm caused by Nagle, the drunk driver.
They continued to have claims against him under Massachu-
setts tort law, unaffected by the amendment. They have lost
a claim against the less culpable wrongdoer, the entity that
could have but did not prevent Nagle from committing the
torts.[10] The plaintiffs are in the same position as most simi-
larly situated persons: those injured before the enactment of
the Massachusetts Tort Claims Act, those injured after the
enactment of the amendment, and most of those harmed in
the interval as a result of the carelessness of municipal em-
ployees in failing to guard against torts committed by third
parties.

We conclude that the retroactive application of the amend-
ment to abolish the plaintiffs' claims against the town of
Framingham does not deny the plaintiffs due process of law
in violation of the State or Federal Constitutions. In order to
uphold the amendment's constitutionality, we need not ap-
prove of the Legislature's decision to make the statutory pub-
lic duty rule retroactive. All we need do is decide, as we
have, that the legislation meets the test of reasonableness
that we have applied.

The argument that the amendment violates separation of
powers principles expressed in art. 30 of the Declaration of
Rights lacks merit and needs little discussion. Until a judicial
proceeding is completed, art. 30 does not bar the Legislature

---

[10]In this facial attack on the constitutionality of the amendment, we
have no indication whether insurance coverage may have been available to
the plaintiffs or whether Nagle may have had assets to satisfy any claims
against him. The plaintiffs stipulated to the dismissal with prejudice of
their actions against Nagle.

from enacting legislation affecting that litigation. See *Boston
v. Keene Corp.*, *supra* at 313-314, and cases cited; *Casieri's
Case*, 286 Mass. 50, 56 (1934). The amendment is not an
improper legislative intrusion into the functions of the
judiciary.

The judgments are reversed, and judgment shall be en-
tered in each action for the town of Framingham.

*So ordered.*

LIACOS, C.J. (concurring). In this case, the plaintiffs, after
expending the time, energy and money necessary to try to a
jury a case arising from a tragic accident, obtained against
the town judgments, which were statutorily limited to
$100,000. The town appealed, and the Appeals Court, for a
reason this court holds to have been incorrect, reversed. The
plaintiffs petitioned this court for further appellate review,
and, after such review was granted and their appeal re-
mained pending, the Legislature enacted legislation which
purports to retroactively abolish their cause of action.

I agree with the court that St. 1993, c. 495, § 144, may be
retroactively applied to most claims accrued prior to the ef-
fective date of the legislation. But I am troubled by certain
aspects of the court's analysis. I think that the court gives
short shrift to the value of the plaintiffs' interest in this case,
and that the "balancing test" that as the court applies it does
not provide a proper and meaningful balancing of interests.
Thus, I write separately to consider the effect the legislation
has on the plaintiffs' rights to due process of law as guaran-
teed by arts. 1, 10, and 12 of the Declaration of Rights. In
my view, the plaintiffs come a lot closer to tipping the bal-
ance in their favor than the court acknowledges.

The court states, *ante* at 631: "Our approach to a claim
that a statute violates due process protections by abolishing
rights retroactively has called for a balancing of interests to
determine whether the legislative action is unreasonable.
*American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374

Mass. 181, 189-190 (1978)." The court identifies three considerations as guiding this determination: "the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights affected retroactively; and the extent or scope of the statutory effect or impact." *Ante* at 631, quoting *Leibovich* v. *Antonellis*, 410 Mass. 568, 577 (1991). As the court acknowledges, no case has ever put before us squarely the question whether a common law cause of action may be abolished retroactively without violating the Constitution. *Ante* at 630. I am somewhat troubled by the relative ease with which the court adopts and applies a "test" which has previously been used only in other contexts.[1]

Nonetheless, given the widespread use of the test in cases concerning retroactive legislation, I do not disagree that its application, with a certain amount of flexibility, is probably appropriate here. However, in its "balancing of interests," *ante* at 631, the court leaves out of the mix some factors which I would include.

As to the court's consideration of the three factors outlined in *Leibovich*, I accept the court's analysis of the first consideration, i.e., the nature of the public interest motivating the retroactive legislation. I am less persuaded that the consider-

---

[1]Neither *American Mfrs. Mut. Ins. Co.*, nor any of the other cases to which the court refers in setting forth its test, concern the retroactive abolishment of a cause of action. See *Leibovich* v. *Antonellis*, 410 Mass. 568, 577 (1991) (concerning retroactive expansion of potential liability); *St. Germaine* v. *Pendergast*, 416 Mass. 698, 702-703 (1993) (retroactive expansion of obligation); *Nantucket Conservation Found.* v. *Russell Management, Inc.*, 380 Mass. 212, 215-216 (1980) (retroactive effect on property right).

I also find curious the fact that the court does not discuss cases like *Pinnick* v. *Cleary*, 360 Mass. 1 (1971), where the court faced the question of the constitutionality of the abolishment of a common law right to recover in exchange for a substitute statutory right. Because the *Pinnick* court relied on the fact that the retroactive statute provided a substitute remedy, and no such substitute remedy is provided for here, I think that, at the very least, the court should explain why the lack of a substitute remedy is not a factor to be considered.

ation that the court gives the second, i.e. the nature of the plaintiffs' interest, is adequate.

The court states that "[a]lthough the plaintiffs' interests in the judgments on appeal are entitled to recognition as property rights, those interests are not as firmly established as rights of the kind that this court has protected against retroactive legislative abolition." *Ante* at 632. Apparently, in the court's view, the value of the plaintiffs' right is impaired because their claims "rested on the uncharted and shifting pattern of the public duty rule and its exceptions." *Ante* at 632. Although my views as to the problems inherent in the traditional public duty rule are a matter of record, see *Jean W.* v. *Commonwealth*, 414 Mass. 496, 497-514 (1993) (Liacos, C.J., concurring), I would attach more significance than does the court to the fact that the underlying claim in this case was "close" to an "exception that a majority of this court had adopted at the time of the accident." *Ante* at 632. See *Irwin* v. *Ware, supra.* The Appeals Court felt that the plaintiffs' claim fell comfortably within the special relationship exception created in *Irwin.* See *Carleton* v. *Framingham,* 34 Mass. App. Ct. 686, 690 (1993). So do I.

For this reason, I would give more weight to the value of the plaintiffs' claim than the court appears to do. Likewise, I think the court fails to adequately address the "extent or scope of the statutory effect or impact." *Leibovich, supra* at 577. Specifically, the court states that the "plaintiffs' decedents did not act in reliance on the existence of a particular rule of law concerning governmental liability." *Ante* at 634. This is undoubtedly true as far as it goes. However, in my view, the court should have considered also the reasonable reliance on the state of the law that the plaintiffs demonstrated by pursuing their case and expending considerable time, energy and money. See *Keniston* v. *Assessors of Boston,* 380 Mass. 888, 905 (1980) (reliance on cases in pursuing appeals relevant). This expenditure of time, energy and money is, after all, what appears to form the basis of the court's recognition of a property interest, and it is what, in terms of fundamental fairness, weighs most heavily in favor

of the plaintiffs. The Legislature has taken away from these plaintiffs something valuable. The court unintentionally trivializes this interest.

The reason that I concur with the court's opinion, is that, even with the fuller consideration of the plaintiffs' interest which I advocate, I would nonetheless have to conclude that they have not sustained their substantial burden in this case. The Legislature had before it the difficult task of fixing the boundaries of a " 'rule' composed of inconsistent and irreconcilable parts, the sum of which [left] both the Justices and litigants quite incapable of predicting when and why liability [would] be imposed," *Jean W., supra* at 504 (Liacos, C.J., concurring). Although I may not agree that the course chosen by the Legislature was the wisest one available, I understand the need for pending claims to be affected. At the same time, I cannot accept the court's suggestion that a judgment already obtained may be taken away without raising a serious question of fairness.[2]

---

[2]I agree with the court that the plaintiffs' separation of powers arguments under art. 30 must fail because the judgment, subject to appeal, was not final. It should be noted also that St. 1993, c. 495, § 144, explicitly exempts final judgments from the amendments made by § 57 by providing that "[s]ection 57 of this act shall apply to all claims upon which a final judgment has not entered . . . ."