Fremont-Smith, J.
Currently before this court are two consolidated actions arising out of the same administrative proceedings at the Department of Employment and Training (DET). First, there is an action for declaratory judgment, pursuant to G.L.c. 231A, whereby plaintiffs seek a declaration that a regulation promulgated by the Commissioner of the DET (the Commissioner) is unlawful.[2] Second, there is an action by the Commissioner for judicial review of a decision by the Board of Review of the DET.[3] The Commissioner moves (1) to dismiss the declaratory action as moot and (2) for judgment on the administrative record in the action for judicial review.[4] Plaintiffs oppose the motion to dismiss the declaratory action as moot and the motion for judgment on the administrative record. Further, plaintiffs cross-move for judgment on the administrative record.
For the following reasons the Commissioner’s motion to dismiss the declaratoiy action as moot is DENIED-, the Commissioner’s motion for judgment on the administrative record, reversing the Board of Review, is DENIED; and plaintiffs’ (Donald W. Fogg et. al.) motion for judgment on the administrative record is ALLOWED.
FACTUAL BACKGROUND
Fogg worked for Martin-Marietta from April, 1993 until April 29, 1994,[5] when he left pursuant to the closing of the Burlington facility. In late 1993, Martin-Marietta offered him several severance plans, and he chose one that allowed him to terminate his employment and collect his pension fund prior to age 60. His pension became effective on May 21, retroactive to May 1, 1994.
Fogg filed for unemployment benefits on May T9, 1994. At the time that Fogg applied for unemployment benefits, G.L.c. 151A, §29(d) (6) required the reduction of weekly unemployment benefits where the benefi *480 ciary was also receiving pension payments, “except that no payment shall reduce the amount of benefits otherwise payable unless the individual’s date of entitlement for such payment occurred during the base period or benefit year." G.L.c. 151A, §29(d)(6) (1992 ed.) (emphasis added).
“Benefit year" was and still is defined as the “period of fifty-two consecutive weeks beginning on the Sunday immediately preceding the date on which an individual files a claim for [unemployment] benefits.” G.L.c. 151A, §1 (b) (1992 ed.). Fogg filed for unemployment benefits on May 19, 1994. Therefore, his benefit year is May 15, 1994 through May 14, 1995, so that his entitlement date to the pension (May 1, 1994) did not occur during his benefit year.
Prior to amendment in 1992, the definition of “base period” was “the period of fifty-two consecutive calendar weeks ending with the day immediately preceding the first day of a claimant’s benefit year,” G.L.c. 151A, §l(a) (1992 ed.), so that Fogg’s base period would have been May 15, 1993 through May 14, 1994, resulting in consecutive time periods, with no interim period between the base period and the benefit year, and his entitlement date would have been within the base period.
The amendment in 1992 applied to “benefit years beginning on or after January [1, 1993]," and defined “base period” as “the first four of the last five completed calendar quarters immediately preceding an individual’s benefit year.” G.L.c. 151A, §l(a) (1992 ed.).[6] Under the definition of base period as amended, Fogg’s base period is January 1, 1993 through December 31, 1993,[7] and there exists an interim period of time between the base period and the benefit year (May 15, 1994 — May 14, 1995) from January 1, 1994 through May 14, 1994, during which his entitlement to pension occurred (May 1,1994), so that his weekly unemployment benefits were not to be reduced pursuant to §29(d)(6).
On April 10, 1994, however, before Fogg terminated his employment and filed for unemployment benefits, the Commissioner of the DET issued regulation 430 CMR 4.04(8), which is the subject of the present declaratory action.[8] This regulation effectively removed the interim period by authorizing a reduction of weekly unemployment compensation where the applicant for unemployment benefits became entitled to pension payments during the period from the beginning of the base period through the end of the benefit year. Plaintiffs contend that this regulation was void because it was beyond the Commissioner’s authority pursuant to G.L.c. 23 §9J and was repugnant to the statute as enacted by the legislature, and was not, as the Commissioner contends, valid as an interpretation of the provisions of G.L.c. 151A.
In accordance with this regulation, the DETnotified Fogg, in a letter dated July 5, 1994, that an amount equal to 50% of his pension would be deducted from his weekly unemployment benefits of $325, púrsuant to c. 151A, §29(d)(6), resulting in weekly unemployment benefits of $26. This determination was affirmed by Review Examiner Thomas M. Ritacco on August 11, 1994, but the Board of Review, in an appeal pursuant to G.L.c. 151A, §40, held, in a decision dated October 4, 1994, that, notwithstanding the regulation, Fogg was not subject to the deduction from his weekly unemployment benefits.[9] The Commissioner sought judicial review of this decision, pursuant to c. 151A, §42, which is now before this court.[10]
On December 29, 1994, the state legislature amended c. 151A, §29(d)(6) by deleting the interim period, i.e., by deleting the following words from the end of §29 (d) (6): “except that no payment shall reduce the amount of benefits otherwise payable unless the individual’s date of entitlement for such payment occurred during the base period or benefit year.” St. 1994 c. 260, §5. This amendment was made retroactive, i.e., was made “applicable with respect to new initial claims for unemployment benefits filed on or after April [10, 1994],” the effective date of regulation 430 CMR 4.04(8), St. 1994 c. 260, §7, thus encompassing Fogg’s claim (which was filed on May 14, 1995), regardless of whether the regulation was void.
DISCUSSION A. MOTION TO DISMISS THE DECLARATORY ACTION AS MOOT
Plaintiffs seek a declaration that the regulation is invalid as an ultra vires regulation that deprives them of properly rights. The Commissioner, on the other hand, contends that the regulation was valid and that, in any event, the retroactive amendment of G.L.c. 151A, §29(d)(6) by St. 1994 c. 260, §§5 & 7 (the Act) moots the regulation and thereby moots plaintiffs’ action for declaratory relief. Plaintiffs, in turn, contend that the retroactive application of the Act is unconstitutional, so that both the regulation and retroactive statute being of no effect, the pre-Act statute controls.
The question whether a statute violates due process protections by abolishing rights retroactively requires a balancing of equities to determine whether the legislative action, under the particular circumstances, is unreasonable. Carleton v. Framingham, 418 Mass. 623, 631 (1994). The court must balance “the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights affected retroactively; and the extent or scope of the statutoiy effect or impact.” Id. (quoting Leibovich v. Antonellis, 410 Mass. 568, 577 (1991)). “In any evaluation of reasonableness, the plaintiffs have a heavy burden to meet, and [the court] will recognize every rational presumption in favor of the legislation.” Id.
With respect to “the nature of the public interest which motivated the legislature,” the Commissioner argues that the over-all purpose of the Act was to preserve funds in the Unemployment Compensation Fund by preventing claimants from receiving both a pension and full unemployment and to ensure continued federal funding by avoiding violations of the Fed *481 eral Unemployment Tax Act. Clearly, “the protection of the public treasury is a legitimate objective.” Carle-ton, supra at 633. However, as plaintiffs point out, retroactive application of the December 1994 amendment was not necessary to effectuate those objectives. Further, choosing April 10, 1994 as the effective date appears to have been arbitrary, as it allowed unemployment claims filed before that date to be unreduced by pension payments, while requiring a reduction in unemployment benefits only with respect to claims made after April 10.
As for the “nature of the rights affected retroactively,” the Commissioner argues that the unemployment compensation statute, c. 151, provides that no property right is created by virtue of the enactment of that statute, so that no reasonable expectancy was created. But here, prior to the amendment, there was not only statutory entitlement, but there had also been actual payment of the benefits,[11] so that Fogg and the others have received and are likely to have already spent the funds. Furthermore, the plaintiffs had relied upon the pre-Act statute in expending time and money in prosecuting the appeal respecting the regulation, which both the majority and concurrence in Carleton treated as an important consideration. Carleton, supra at 631, 637. Finally, the “extent of the impact" is not here limited to a single person, as there are a substantial number of persons similarly affected.
Considering each of the Carleton factors, the Court concludes that the equities decidedly tip against retroactive application of the statute so that it is unreasonable and hence invalid. Accordingly, the Commissioner’s motion to dismiss plaintiffs’ petition for a declaration that the regulation is invalid, is not rendered moot by the retroactive application of the statute, and the Commissioner’s motion to dismiss on that basis is denied.
B. MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
As the amended statute cannot be applied retroactively, the question remains whether the regulation required plaintiffs’ unemployment benefits to be reduced. Both the Commissioner and the plaintiffs move for judgment on the administrative record. The Board of Review held that Fogg’s unemployment benefits should not be reduced, notwithstanding regulation 430 CMR 4.04(8),[12] and, as this Court has determined that the Act of December 29, 1994 may not be given retroactive effect, the validity of the regulation 430 CMR 4.04(8) remains to be determined.
The legislature has authorized the Commissioner to issue “reasonable rules, regulations and orders as may be necessary or suitable for the administration and enforcement” of c. 151A. G.L.c. 23, §9J, and Massachusetts courts “grant substantial deference to an interpretation of a statute by the administrative agency charged with its administration.” Massachusetts Hosp. Assoc., Inc. v. Department of Medical Security, 412 Mass. 340, 346 (1992) (citing Manning v. Boston Redevelopment Auth., 400 Mass. 444, 453 (1987)). A court will “not declare [a regulation] void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.” Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 776 (1980).
“However, ‘an incorrect interpretation of a statute . . . is not entitled to deference.’ ” Id. (quoting Kszepka’s case, 408 Mass. 843, 847 (1990). “When a subject has been fully regulated by statute an administrative board cannot further regulate it by the adoption of a regulation which is repugnant to the statute.” Commonwealth v. Johnson Wholesale Perfume Co., 304 Mass. 452, 457 (1939).
The language of c. 151A, §29(d)(6) and of c. 151A, §1 is entirely clear and unambiguous. If the entitlement to unemployment compensation does not occur “during the base period or benefit year” as those terms are defined in §1, then the unemployment compensation is not to be reduced in accordance with §29 (d)(6). The Commissioner cannot issue a regulation that is repugnant to the clear and unambiguous meaning of the statute and which cannot be harmonized by any reasonable construction with the legislative mandate. See Purity Supreme, supra at 776.
While the Commissioner cites several cases for the proposition that a statute must be construed in accordance with the spirit of the act and to further its purpose, all of the cases cited involved statutes in which the language was ambiguous. In the instant case, on the other hand, the language is clear and unambiguous, so the court is not warranted to look further, such as to the purported general legislative intent, to contravene the statute’s plain meaning. Accordingly, the Court concludes that the decision of the Board of Review with respect to the regulation may not be reversed.
ORDER
For the foregoing reasons the defendant Commissioner Nordberg’s motion to dismiss the declaratory action as moot is DENIED', the Commissioner’s motion for judgment reversing the decision of the Board of Review, on the administrative record, is DENIED: and the motion of Donald W. Fogg et. al. for judgment on the administrative record is ALLOWED. Judgment is ordered to be entered for plaintiffs Donald W. Fogg et. al. in Superior Court C.A. No. 94-4570 and for defendants, Donald W. Fogg et. al. in Boston Municipal Court No. 219904.

Suffolk Superior Court, Civil No. 94-4570.

After an adverse ruling by the Board of Review, the Commissioner appealed to the Boston Municipal Court, pursuant to G.L.c. 151A, §42. BMC No. 219904. By order dated February 7, 1995, the Chief Justice for Administration and Management assigned this court to sit as a justice of the Boston Municipal Court with respect to the Commissioner’s appeal.

The findings and decisions of the board shall be reviewed in accordance with the standards for review provided in G.L.c. 30A, §14(7). G.L.c. 151 A, §42.

Fogg began his employment with RCAin December 1965. General Electric purchased RCA in 1986, and Fogg worked for General Electric from June 1986 until April 1993. In April 1993, Martin-Marietta purchased General- Electric’s Aerospace Division, and Fogg worked for it until April 29, 1994. Thus, Fogg has 281A years of collective service for the three companies.

St. 1992 c. 26 §6.
The Commissioner explains in his Memorandum in Support of Motion to Dismiss Declaratory Action as Moot and For Judgment on Administrative Record at pages 4-6 that the change in the definition of “base period” was to reflect changes in the wage data used to determine benefits. St. 1992 c. 26 changed Massachusetts from a “wage request state” to a “wage reporting state” by amending G.L.c. 62E, §12.

This base period is the one found by the Commissioner’s representative. The Board of Review found a different base period, April 1, 1993 through March 31, 1994.

The regulation provided that, for the purpose of determining any reduction under the provisions of M.G.L.c. 151A, §29(d)(6), “no payment of any pension, retirement or retired pay, annuity or other similar payment shall reduce the amount of benefits otherwise payable unless the individual’s date of entitlement for such payment occurred during the period covering the beginning of the base period through the expiration of the benefit year.” 430 CMR 4.04(8).

The Board of Review adopted the findings of fact made by the Commissioner’s representative. The Board, however, noted that Fogg’s base period was from April 1, 1993 through March 31, 1994. Decision at 3-4.

This is docketed as Boston Municipal Court, No. 219904, but, as noted above, it is presently before this court pursuant to an order of assignment dated February 7, 1995.

The initially withheld amount of unemployment benefits was paid to Fogg, even though c. 151 did not require such payments to be made in the circumstances. The Commissioner sought judicial review of the adverse agency decision pursuant to c. 151A, §42, and it appears was under no legal compulsion to pay the benefits until a judicial decision was made. See G.L.c. 151 A, §42.

The Board of Review’s decision was not made part of the record, so that its reasoning is not known to the Court.