46 Mass. App. Ct. 235 (1999)     235

Dupont *v.* Commissioners of Essex County; Deutsch, Williams, Brooks, DeRensis, et al., P.C.

JOSEPH L. DUPONT & others[1] *vs.* COMMISSIONERS OF ESSEX
COUNTY & another[2]; DEUTSCH, WILLIAMS, BROOKS, DERENSIS,
HOLLAND AND DRACHMAN, P.C., third-party defendant.

No. 97-P-1594.

Essex. December 4, 1998. - January 26, 1999.

Present: ARMSTRONG, KAPLAN, & GILLERMAN, JJ.

*Statute,* Construction, Repeal, Retroactive effect. *Due Process of Law,* Retroac-
tive application of statute. *County,* Employees, Retirement board.

Statute 1996, c. 306, § 9, which repealed G. L. c. 32, § 16(2), without a sav-
ing clause, operated retroactively to extinguish rights and interests asserted
in pending actions that were brought under the statute before the effective
date of repeal and had not yet reached final judgment. [237-240]

CIVIL ACTION commenced in the Superior Court Department on
February 16, 1995.

The case was heard by *Richard E. Welch III,* J., on motions
for summary judgment.

*Mary P. Harrington* for the plaintiffs.

*Catherine J. Savoie* for Deutsch, Williams, Brooks, DeRen-
sis, Holland and Drachman, P.C.

*Lawrence J. O'Keefe,* for Commissioners of Essex County &
another, was present but did not argue.

KAPLAN, J. In late 1988 the commissioners of Essex County
recognized there would be very substantial shortfalls of revenue
for fiscal 1990. The county advisory board met several times to
consider how to cut the prospective budget to meet the crisis.
On April 29, 1989, a budget was voted with heavy reductions of
force and with various other economies. Most members of the
staff of the county engineering department, including the present
plaintiffs, were to be laid off. The plaintiffs received termination
notices on or about May 12, 1989, effective on July 1, 1989.

---

[1] Carl Cheever, James Fitzgerald, Henry Mello, and Walter Wilson.

[2] The treasurer of Essex County.

On the books at the time was G. L. c. 32, § 16(2), as amended by St. 1982, c. 630, § 21 (text in the margin).[3] Under that statute the "removal or discharge" of an employee in the plaintiffs' classification "shall not become effective" until a written notice, with a fair summary of the facts on which the action was based, had been filed with the retirement board, following which there would be a hearing, if the employee requested it. Unless the board found the action was justified, the employee would be entitled to be reinstated with back pay.

The county commissioners, as employers, failed to follow the procedure of the statute in respect to these plaintiffs. The record does not explain the omission — whether sheer inadvertence or perhaps an assumption that there was no point in invoking the procedure because it was known to all that the termination was justified by the fiscal situation.[4]

Nearly six years after the layoffs, on February 16, 1995, the plaintiff Dupont (joined shortly by the other plaintiffs) commenced the present action claiming the statutory reinstatement and back pay.[5] The defendant county commissioners and treasurer, as third-party plaintiffs, impleaded as third-party

[3]"The removal or discharge of any member in service classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and has completed fifteen or more years of creditable service, or any member so classified who has not attained age fifty-five but who has completed twenty or more years of creditable service, or any such member who is a veteran and has completed ten or more years of creditable service, shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the board. The procedure set forth in subdivision (1) relative to delivery of copies, statement of service thereof, notice, hearing if requested, and the filing of a certificate of findings and decision, so far as applicable, shall apply to all proceedings involving such removal or discharge. Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his office or position without loss of compensation."

[4]Although not given the statutory notice, the plaintiffs were well informed throughout. Four of the five plaintiffs attended the official meeting at which the budget vote was taken.

The union and the county entered into a "side letter re: bumping" (for vote by the union members on April 25, 1989). Besides setting out the agreed bumping routines, the side letter provided that the union was to be responsible for notifying employees of the layoffs and their bumping rights. Around the time of the layoffs, plaintiffs waited upon union people to inquire what could be done to save their jobs; nothing eventuated.

[5]Regina C. Mielcarz, who was president of the union local and a member of the Essex County retirement board, attended a conference in fall, 1994, of

defendants the Deutsch Williams law firm who had served as attorneys for the county commissioners, alleging that the firm would be liable to the commissioners if the commissioners were cast in damages in the main action. In due course the plaintiffs moved, and the third-party defendants cross-moved, for summary judgment.

On August 9, 1996, with the present action pending in Superior Court, St. 1996, c. 306, § 19, was enacted, repealing G. L. c. 32, § 16(2). The act was without a saving clause. Relying on the repealer, the judge below denied the plaintiffs' motion and allowed the third-party defendants' motion and entered judgment dismissing the action. The plaintiffs appealed.

From the absence of a saving clause in the 1996 act, we can infer that the Legislature "intended" (if the word can fairly be used) not only to nullify c. 32, § 16(2), for the future, but also to abort any lawsuit under § 16(2) commenced before, and pending on, the date August 9, 1996. Indeed, that such was the legislative intention is not seriously disputed.

1. The parties spend much space wrangling over a statement by Justice Gray in *New London N.R.R.* v. *Boston & Albany R.R.*, 102 Mass. 386, 389 (1869):

> "[A] statute which wholly repeals an earlier one, either expressly or by implication, without any saving clause, makes it ineffectual to support any proceedings, whether not yet begun, or pending at the time of its passage, and not already prosecuted to final judgment vesting absolute rights."

To a reader of this pronouncement more than a century later, it appears to be too sweeping to be true to the full reach of its literal boundaries, and ought to be understood in relation to its context. The court had appointed commissioners under a stand-

---

the Massachusetts Association of Contributory Retirement Systems and learned then of a possible claim of employees for official failure to follow c. 32, § 16(2). She informed Dupont who informed others. The defendant O'Leary, county treasurer, also a member of the retirement board, about this time alerted various employment authorities and others to the procedures of § 16(2).

The retirement board, with Mielcarz, O'Leary, and one other person sitting, held what amounted to pro forma meetings in early May, 1998, attended by the plaintiffs and by an attorney for the county, at which the board took votes to reinstate plaintiffs with back pay.

ing statute (Gen. Sts. c. 63, § 117) to take evidence and award reasonable compensation for the plaintiff company's admitted use of the defendant company's road, and to report to the court. After the commissioners had begun hearings, the Legislature passed an act of 1869 (St. 1869, c. 408) which established a board of railroad commissioners to be appointed by the Governor and conferred on them the duties previously exercised by the court-appointed commissioners, subject as before to report to the court. The statutory switch from a judicial to an administrative mode was easily validated in the *New London* case, and the quotation reads well enough upon that situation. However, the absolutist language of automatic total supercession of an earlier statute by a later one could not stand firm when sought to be applied to imaginable cases of individual rights rather than governmental structures. And so we see the *New London* dictum in effect being limited over the years by appeal to distinctions between the procedural and the substantive, remedial and punitive, unsettled and vested.[6] As the old dictum has been haltingly modified, it has approached present thought about "retroactive" legislation, and that, rather than the dictum, is our better resort in dealing with the instant case.

2. In considering whether the 1996 statute repealing § 16(2) may be given effect to cancel such a right or interest as the plaintiffs then had, we follow the precepts of *Carleton* v. *Framingham*, 418 Mass. 623, 631-635 (1994), and are reminded that "a claim that a statute violates due process protections by abolishing rights retroactively[7] has called for a balancing of interests to determine whether the legislative action is unreasonable," and "[i]n any evaluation of reasonableness, the plaintiffs have a heavy burden to meet, and we will recognize every rational presumption in favor of the legislation." *Id.* at 631.

*a. Nature of the rights affected.*[8] We note at the threshold that a favorable outcome for the plaintiffs in the lawsuit was doubtful even if the statute had not intervened. Reading § 16(2) with

[6]See *Wilson* v. *Head*, 184 Mass. 515, 518-519 (1904); *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 251-252 (1932); *Pittsley* v. *David*, 298 Mass. 552, 555-556 (1937); *Miller* v. *Emergency Hous. Commn.*, 330 Mass. 693, 699-700 (1953); *Zuker* v. *Clerk-Magistrate of the Brookline Div. of the Dist. Court Dept.*, 423 Mass. 856, 861-862 (1996).

[7]Implicated is due process of law as guaranteed by arts. 1, 10, and 12 of our Declaration of Rights and the Fourteenth Amendment to the United States Constitution.

[8]The captions are drawn from the *Carleton* case.

its internal citation to the procedure of § 16(1), one sees it was expected that the notice, hearing, etc., would be carried out promptly, and surely not over a period of years. This suggests that an employee, complaining of lack or refusal of notice, must take action with some expedition. However, there is no reference in § 16(2) or its environs to a limitations period. The defendants have contended that the relevant period is not the statutory six years for actions on contract, relied on by these plaintiffs, but a much shorter period on analogy, e.g., to the six-month provision of the Civil Service Act for initiation of application to court, G. L. c. 31, § 42.[9] So too, it is suggested that the doctrine of laches could be applied to bar the untowardly late commencement of the action. Compare *Yetman* v. *Cambridge*, 7 Mass. App. Ct. 700, 707-709 (1979).

All this apart, there is a fundamental consideration. The plaintiffs' basic grievance is that the commissioners did not give them the required notice under § 16(2). Suppose the notice had been given. The commissioners would "justify" before the retirement board, pointing to the crisis conditions that occasioned the layoffs, and the justification would no doubt have been held good; the plaintiffs do not gainsay this. And see *Shaw* v. *Selectmen of Marshfield*, 36 Mass. App. Ct. 924, 925-926 (1994). Thus the "rights affected" were slim at most.[10]

*b.* Nature of the public interest. Considering what might have

[9]The defendants also refer to the Massachusetts Labor Relations Act, G. L. c. 150E, and 456 Code Mass. Regs. §§ 15.01 & 15.03 (1993), and to limitations in regulatory statutes in the private employment field.

[10]It would be curious to think of the right, such as it was, to a hearing that would turn out to be futile, as a "vested" right immune to repeal. The plaintiffs' mention of G. L. c. 32, § 25(5), which characterizes pension rights and benefits as contractual, is inapposite to the particular issue at bar.

Note a tendency — without the benefit of any repealer — to interpret statutory notice and hearing provisions, where such interpretation is reasonably possible, as inapplicable where the proponent has no chance of success. See cases where teachers are dismissed because of decrease of student enrollment or for budgetary reasons: *Lane* v. *School Comm. of Paxton*, 378 Mass. 794 (1979); *Milne* v. *School Comm. of Manchester*, 381 Mass. 581, 582-583 (1980); *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 214-215 (1982); cf. *Haskell* v. *School Comm. of Framingham*, 17 Mass. App. Ct. 628, 632 n.5 (1984). See also a non-teacher case, *Nawn* v. *Selectmen of Tewksbury*, 4 Mass. App. Ct. 715, 718 (1976).

*Thibodeau* v. *Seekonk*, 40 Mass. App. Ct. 367 (1996), cited by the plaintiffs, does not assist the argument for a vested right. It is simply a case where the employee enforced § 16(2) successfully (town selectmen demoted plaintiff, captain of firefighters, to rank of lieutenant without the § 16(2) notice, on

motivated the Legislature to pass the retroactive statute, we are entitled to surmise that the Legislature was attempting to excuse procedural slips on the part of public employers which might threaten — as did the plaintiffs' lawsuit — to cost the public entities amounts out of proportion both to the employers' faults and to the just deserts of employee claimants. Compare the statement in the *Carleton* opinion, "Although the amendment provides retroactive relief to the Commonwealth and its political subdivisions and is thereby self-serving, the legislative judgment that the public purse must be protected in the circumstances carries substantial weight." 418 Mass. at 633.[11] A broader purpose of the 1996 repealer of § 16(2) evidently was to relieve public employers of this requirement of taking the initiative to come forward and commence a procedure to justify their actions in dismissals (or the like) of their employees.

*c.* Scope of the statutory impact. In this and any similar cases the employees suffered the unfortunate fact of layoff with no plausible substantive ground for challenging the employer's decision — here the decision was in fact the community action approving the budget. Unfortunate too, was the employer's failure to hew to the simple procedure of § 16(2), but it can hardly be said that this engendered any expectation or reliance on the part of the employees which was defeated by the repealer statute. The employees presumably received retirement benefits according to law. A few years later the procedural flaw was discovered (see note 5, *supra*) and the employees sued to try to take advantage of it. When the Legislature acted, it halted a lawsuit, of doubtful merit in any event, which, had it succeeded, would have resulted in a windfall for the plaintiffs at public expense.

*Judgment affirmed.*

---

mistaken view that demotion was not "removal"). There was no repealer statute in the picture.

[11]For the six years before commencement of suit, the face amount of back pay for the plaintiffs would probably well exceed $1 million. In the *Carleton* case, the retroactive statute, held valid in application, had the immediate result of extinguishing two judgments, each for $100,000, on which the court had already granted further appellate review. The statute had the general effect of abolishing certain negligence claims against public authorities.