DANA PARELLO *vs.* LISSA C. MCKINNEY.

No. 96-P-1582.

Middlesex. April 6, 1998. - May 21, 1999.

Present: ARMSTRONG, LENK, & BECK, JJ.

*Due Process of Law,* Retroactive application of statute. *Statute,* Repeal, Retroactive effect. *State Building Code.*

Discussion of the legislative history of G. L. c. 143, § 51, as amended by St. 1992, c. 66, § 1, and repealed on January 4, 1994. [787-788]

Discussion of the traditional analyses applicable to consideration of whether legislation eliminating a cause of action applies retroactively or prospectively only [788-790], and discussion of the reasonableness analysis first set forth in *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 190-191 (1978) [790].

The repeal on January 4, 1994, of a 1992 amendment to a section of the State Building Code operated reasonably to abolish a cause of action that accrued prior to the repeal, where the repeal had no saving clause, and where the plaintiff advancing the cause of action did not rely on the amendment before its repeal or lose any right of redress against any more culpable wrongdoer. [790-792]

CIVIL ACTION commenced in the Superior Court Department on March 21, 1994.

The case was heard by *Charles T. Spurlock,* J., on a motion for summary judgment.

*Joel M. Sowalsky* for the plaintiff.

*Diane Stelfox Doyle* for the defendant.

BECK, J. At issue here is whether legislation eliminating a legislatively created cause of action may be applied retroactively to a claim that accrued prior to the repeal. This issue is often difficult and has been subject to various tests and legal standards for decades. In this case, by amendment to a section of the State Building Code, G. L. c. 143, the legislation in question created strict liability against

"[a]ny person who obtains a permit pursuant to the state

building code to erect, construct, or demolish a building or structure . . . for all injuries and damages that result from a failure to provide a safe workplace, or caused by a violation of the state building code or other codes, by-laws, rules and regulations applicable to the construction site."

G. L. c. 143, § 51, as amended by St. 1992, c. 66, § 1. The amendment was effective on June 12, 1992; it was repealed on January 4, 1994. Prior to the amendment, and after its repeal, liability under § 51 applied to "[t]he owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building."

*Factual background.* The plaintiff, Dana Parello, suffered an injury to his hand on November 2, 1993, while using a saw belonging to Ricciardelli Contracting Company (Ricciardelli). The defendant homeowner, Lissa McKinney, had obtained a building permit and hired Ricciardelli to add a deck and a sliding door to her house. The plaintiff filed suit on March 21, 1994, against the construction company and the homeowner. He claimed, inter alia, that the homeowner was liable under the amended version of G. L. c. 143, § 51, at issue here, which had been repealed two months earlier.

A Superior Court judge allowed the defendant homeowner's motion for summary judgment. He concluded that the legislation eliminating the cause of action applied retroactively to the plaintiff's claim, citing *Pittsley* v. *David*, 298 Mass. 552 (1937). On appeal, the plaintiff argues that the statute should not be applied retroactively, claiming that the 1992 amendment to G. L. c. 143, § 51, created a vested right, citing *Cudlassi* v. *MacFarland*, 304 Mass. 612 (1939), or was a substantive change that should be applied prospectively only, citing *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3-5 (1914) (Rugg, C.J.) (also discussing vested right analysis in legislation concerning attachments to real property).

In our analysis, we start with the legislation at issue, which grew out of litigation involving parties unrelated to this case. We then review the arguments of the parties, which rest on long-standing approaches to the retroactivity issue. Finally, we resolve the issue by using the reasonableness test first set out in *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190-191 (1978), and recently followed in *Carleton*

v. *Framingham*, 418 Mass. 623, 631-635 (1994), and *Dupont* v. *Commissioners of Essex County*, 46 Mass. App. Ct. 235, 238 (1999).

*Legislative history.* In 1989, Francis X. St. Germaine, III (Kip), suffered severe injuries when a wall of a house being constructed for Michael Pendergast fell on Kip, who was a laborer on the job. *St. Germaine* v. *Pendergast*, 411 Mass. 615, 616 (1992) (*St. Germaine I*). Kip and his parents filed suit against Pendergast, claiming, inter alia, that Pendergast, "by acting as his own contractor and obtaining a building permit and other documents in his own name to construct the home, voluntarily assumed the role of a [licensed] 'construction supervisor' and 'general contractor,' which made him responsible for any violations . . . of the State Building Code and related regulations," including those of the independent contractor hired to frame the house. *St. Germaine I*, 411 Mass. at 617. The St. Germaines sought relief under G. L. c. 143, § 51, as then in effect (before the amendment at issue here). A Superior Court judge allowed Pendergast's motion for summary judgment on that count and the St. Germaines appealed. On January 14, 1992, the Supreme Judicial Court affirmed the Superior Court and held that G. L. c. 143, § 51, "[was] not meant to apply to a single family home that is under construction." *Id.* at 619.

"In a clear response to [that] decision," the Legislature enacted the amendment set out at the beginning of this opinion. *St. Germaine* v. *Pendergast*, 416 Mass. 698, 701 (1993) (*St. Germaine II*). "This legislation was approved on June 12, 1992, three days before the three-year statute of limitations would have barred the [St. Germaines'] suit." *Ibid.* "In addition, § 2 of c. 66 provide[d] that the act . . . be appli[ed] to all causes of action arising on or after November 1, 1988, a little over two weeks before Pendergast had applied for his building permit." *Ibid.* The St. Germaines filed an action under the provisions of the amended version of G. L. c. 143, § 51, the same day the legislation was approved. *Ibid.* A Superior Court judge dismissed the complaint. *Id.* at 699.

On appeal from that dismissal, the Supreme Judicial Court held that the retroactive application of St. 1992, c. 66, § 1, to Pendergast was constitutionally unreasonable under art. 10 of the Declaration of Rights of the Massachusetts Constitution because it "held [him] to an obligation which the law did not require of him at the time of the incident." *St. Germaine II*, 416

Mass. at 703. The decision in *St. Germaine II* was released on December 29, 1993. A week later, on January 4, 1994, the Legislature added a section to a supplemental appropriation bill then pending, striking the amendment at issue here. St. 1993, c. 495, § 35. By § 145 of that act, the repeal was to take effect "upon its passage," which formally occurred on January 14, 1994. St. 1993, c. 495, § 145.

*Traditional analysis.*

a. *The Pittsley doctrine.* In the case before us, the Superior Court allowed the defendant's motion for summary judgment, citing *Pittsley* v. *David*, 298 Mass. 552, a sixty year old case. In *Pittsley*, the Supreme Judicial Court, relying on even older cases, distinguished "statutes restricting the substantive right of a plaintiff to recover" from "[a] statute which wholly repeals an earlier one, either expressly or by implication." 298 Mass. at 555, quoting from *New London N. R.R.* v. *Boston & Albany R.R.*, 102 Mass. 386, 389 (1869). It cited with approval the "principle" that "where a statutory right of action is given[,] the repeal of the statute without a saving clause destroys the right." *Pittsley* v. *David*, 298 Mass. at 555, quoting from *Wrentham* v. *Fales*, 185 Mass. 539, 542 (1904). The legislation at issue in *Pittsley* struck from a section of a General Law the words "provid[ing] that a violator [of the statute governing penalties for motor vehicle violations] shall 'be liable in an action . ... for all damage caused' by the violation." *Id.* at 554. In the *Pittsley* court's view, "[t]he civil action was purely a creature of the statute. What the Legislature gave it could take away, no vested rights being involved." *Id.* at 557.

The Supreme Judicial Court recently cited *Pittsley* for the proposition that "a statutorily created cause of action is not a 'vested right' and, therefore, may properly be abolished retroactively," *Carleton* v. *Framingham*, 418 Mass. at 630, when "the statutory right of recovery was established to discourage violations of the law by providing a punishment, and not to provide a remedy." *Id.* at 631 (treating the cause of action in question in *Carleton* as one of common law and noting that "it is not at all apparent that the plaintiffs' claims against the [defendant] town were created by statute"). The repeal of strict liability for damages caused by a motor vehicle violation at issue in *Pittsley* is not unlike the repeal of strict liability for a regulatory infraction at issue here.

b. *Substance v. procedure.* The plaintiff relies on the vener-

able rule that statutes are applied prospectively, except those "regulating practice, procedure and evidence [and] those relating to remedies and not affecting substantive rights." *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. at 3. He argues that the legislatively created cause of action at issue here is a substantive right. The Supreme Judicial Court recognized the limitations of this approach twenty-five years ago: "[T]he rule is far easier to state than it is to apply . . . [as] evidenced by the difficulty which [the] court has experienced in its attempts to distinguish statutes affecting 'substantive rights' from those affecting 'only procedures and remedies.' " *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626-627 (1974). Nevertheless this approach survives. See, e.g., *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 318-321 (1993); *Gray* v. *Commissioner of Rev.*, 422 Mass. 666, 670 (1996) (distinguishing retroactive application of a statute regulating "practice, procedure or evidence" from one extinguishing substantive rights).

c. *Vested right.* The plaintiff also argues with some force, quoting from the preamble to St. 1992, c. 66, that in amending G. L. c. 143, § 51, the Legislature explicitly intended to "provide for the civil liability for violations of state building codes." Therefore, the plaintiff argues, *Pittsley* does not apply and the vested right analysis of *Cudlassi* v. *MacFarland*, 304 Mass. 612, does. In *Cudlassi*, the legislation that the court determined should be given prospective application only concerned the calculation of damages, not the elimination of a cause of action. The court in *Cudlassi* explicitly distinguished *Pittsley* as follows: "The statute in question did not, as did that in *Pittsley* v. *David*, 298 Mass. 552, provide for civil liability as a concomitant of criminal liability, not for the purpose of creating a vested right to damages but rather as an additional discouragement of violations of the statutory prohibition." *Cudlassi* v. *MacFarland*, 304 Mass. at 613. "However, it has long been recognized that the term 'vested right' is conclusory — a right is vested when it has been so far perfected that it cannot be taken away by statute." Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 696 (1960). See 1A Singer, Sutherland Statutory Construction § 23.34, at 428-429 (5th ed. 1993 & 1998 Supp.) ("In order to become vested, the right must be a contract right, a property right, or a right arising from a transaction in the nature of a contract which has become perfected to the degree

that it is not dependent on the continued existence of the statute.")

*Reasonableness test.* In *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. at 191, the Supreme Judicial Court set out a reasonableness test to determine whether a statute may constitutionally be applied retroactively. Whatever the current vitality of *Pittsley* and other cases grappling with this issue, given the difficulty of determining whether a right of recovery is remedial or punitive, vested or inchoate, substantive or procedural, we follow the three-part reasonableness test set out in *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.* As do the older cases, the test recognizes that constitutional due process rights may be implicated in the retroactive application of legislation. See *Dupont* v. *Commissioners of Essex County*, 46 Mass. App. Ct. at 238.

At the outset, we must determine whether the Legislature intended the repeal to extinguish the strict liability cause of action for plaintiffs such as Parello. As in *Dupont*, the legislation striking the amendment at issue here was without a saving clause, and from that fact, we can infer that the Legislature intended to eliminate the strict liability provision as to all claims not completed to final judgment. *Id.* at 237. See 1A Singer, Sutherland Statutory Construction § 23.33, at 424 (5th ed. 1993 & 1998 Supp.) ("The effect of the repeal of a statute having neither a saving clause nor a general saving statute to prescribe the governing rule for the effect of the repeal, is to destroy the effectiveness of the repealed act in futuro and to divest the right to proceed under the statute. Except as to proceedings past and closed, the statute is considered as if it had never existed.") There is further support for this conclusion in the speed with which the Legislature proceeded to eliminate the cause of action, once the opinion in *St. Germaine II* was released.

We now proceed to consider whether the Legislature reasonably could abolish the plaintiff's cause of action, which accrued prior to the repeal. The test is one of "reasonableness"; the plaintiff has "a heavy burden to meet, and we will recognize every rational presumption in favor of the legislation." *Dupont*, 46 Mass. App. Ct. at 238, quoting from *Carleton*, 418 Mass. at 631. "In our evaluation, we consider 'the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights affected retroactively; and the extent or scope of the statutory effect or impact.' " *Carleton*, 418 Mass. at 631 (citations omitted).

a. *Nature of the rights affected.* We start with the nature of the plaintiff's right. The cause of action the plaintiff wishes to claim existed from June 12, 1992, to January 14, 1994. He did not file his suit until two months after the repeal. While Parello's cause of action accrued two months before the repeal, there is no evidence that he had taken any steps toward taking advantage of what was a relatively recent statutory addition, or that he had relied on that statute. "Generally, persons challenging a retroactive statute must show that they acted in reasonable reliance upon the previous state of the law." *Leibovich* v. *Antonellis*, 410 Mass. 568, 578 (1991), and cases cited. Compare *Carleton*, 418 Mass. at 631, in which the plaintiffs had "expended the time, effort, and emotional energy involved in a jury trial," and had obtained $100,000 jury verdicts that were on appeal in the Supreme Judicial Court at the time of the repeal; *Dupont*, 46 Mass. App. Ct. at 237, in which the plaintiffs were engaged in litigation at the time of repeal. "The [plaintiff] does not make, and could not credibly make, any argument that he would have acted differently had he known [the statute eliminating liability] would be enacted." *Leibovich* v. *Antonellis*, 410 Mass. at 578. Nor did anyone else rely on the amendment. See *City Council of Waltham* v. *Vinciullo*, 364 Mass. at 629.

b. *Public interest.* "We next consider the public interest that motivated the Legislature to enact the amendment." *Carleton*, 418 Mass. at 633. As the Supreme Judicial Court recognized, it is clear from the legislative history that the Legislature created the strict liability provision to benefit Kip St. Germaine. *St. Germaine II*, 416 Mass. at 701. That there was no more general public interest motivating the Legislature is clear from the fact that the Legislature repealed the amendment without a saving clause as soon as the Supreme Judicial Court rejected its application to Kip St. Germaine. The speedy repeal implies a repudiation of the underlying policy.

If there is a public interest at stake here, it appears to rest with protecting homeowners. As we recently said in reviewing another plaintiff's attempt to find liability against a homeowner under G. L. c. 143, § 51, "[t]he large number of owners of single family houses in the Commonwealth should not be exposed to expanded civil liability deriving from the regulatory provisions of chapter 143 [without any finding of negligence] except by express and clear legislation evidencing that inten-

tion." *Santos* v. *Bettencourt*, 40 Mass. App. Ct. 90, 94 (1996). We see no such intent here.

c. *Scope of statutory impact.* Again, as in *Carleton*, the repeal of the amendment did not affect any claims the plaintiff may have against the contractor, who owned the saw that injured the plaintiff. The plaintiff lost a claim against a homeowner who obtained a building permit and hired a contractor to add a deck and a sliding door to her house but who otherwise had no responsibility for the work or the safety precautions taken. See *Carleton*, 418 Mass. at 634 (plaintiff lost "claim against the less culpable wrongdoer"). "The plaintiff[] [is] in the same position as most similarly situated persons" who were injured while working for a contractor under similar circumstances during the first 115 years of liability under this provision, see St. 1877, c. 214, § 8, and all but nineteen months since then. *Carleton*, 418 Mass. at 634. See *Leibovich* v. *Antonellis*, 410 Mass. at 579 (scope not excessive; statute will affect a relatively small number of cases).

*Conclusion.* In view of the heavy burden on the plaintiff challenging the legislation, the legislative intent, and the particular circumstances of this case, we conclude that retroactive application of the repeal is reasonable. Accordingly, we affirm the judgment of the Superior Court.

*So ordered.*