GREGORY P. DUPONT *vs.* CHIEF OF POLICE OF PEPPERELL
& another.[1]

No. 01-P-665.

Middlesex. November 21, 2002. - March 31, 2003.

Present: GREENBERG, DREBEN, & MASON, JJ.

*Firearms. Practice, Civil,* Judicial review of license to carry firearms. *Statute,* Retroactive statute, Retroactive application. *Due Process of Law,* Retroactive application of statute, Taking of property. *Constitutional Law,* Ex post facto law, Double jeopardy, Taking of property.

This court concluded that G. L. c. 140, § 131(*d*)(1)(b), as amended by St. 1998, c. 180, § 41, prohibiting the issuance of a license to carry firearms to a person who had been convicted of a misdemeanor punishable by imprisonment for more than two years, applied to the plaintiff, whose disqualifying act occurred prior to the date of the amendment, and therefore, the defendant chief of police did not abuse his discretion in revoking the plaintiff's license to carry firearms. [692-693]

This court concluded that the retroactive application of G. L. c. 140, § 131(*d*)(1)(b), as amended by St. 1998, c. 180, § 41, prohibiting the issuance of a license to carry firearms to a person who had been convicted of a misdemeanor punishable by imprisonment for more than two years, was reasonable and therefore not unconstitutional, where the public interest at issue (the physical safety of the citizenry) was one of the utmost importance; where the right affected (the bearing of weapons) was not treated at common law as an absolute right and has been regulated for many years, and the plaintiff could not credibly make any argument that he would have acted differently had he known that the amendment disqualifying him from carrying a firearm would be enacted; and where the impact of the retroactive application was not excessive. [693-694]

This court concluded that G. L. c. 140, § 131(*d*)(1)(b), as amended by St. 1998, c. 180, § 41, prohibiting the issuance of a license to carry firearms to a person who had been convicted of a misdemeanor punishable by imprisonment for more than two years, was not punitive in nature, and was not therefore an unconstitutional ex post facto law placing the plaintiff in double jeopardy [694-695]; moreover, the statute did not constitute a denial of the plaintiff's property rights or deny the plaintiff due process, in that there is no right under art. 17 of the Declaration of Rights of the Massachusetts Constitution for a private citizen to keep and bear arms, nor is any property right involved in the statutory procedures for obtaining a license to carry firearms [695].

[1]Ayer Division of the District Court Department, as a nominal defendant.

CIVIL ACTION commenced in the Superior Court Department on January 10, 2000.

The case was heard by *Paul A. Chernoff*, J., on motions for judgment on the pleadings.

*Robert J. Forrest* for the plaintiff.

*Susan Paulson*, Assistant Attorney General, for Ayer Division of the District Court Department.

*Joseph P. Hannon* for chief of police of Pepperell.

GREENBERG, J. The plaintiff, a resident of Pepperell, applied to the chief of police for renewal of his license to carry firearms pursuant to G. L. c. 140, § 131. Acting on the application on June 3, 1999, the chief revoked his license because the plaintiff had been convicted of operating a motor vehicle while under the influence of alcohol in March of 1998. Because it was the plaintiff's second such offense within ten years, the maximum penalties included imprisonment for not more than two and one-half years. See G. L. c. 90, § 24(1)(*a*)(1), third par. About six months after this conviction, the General Court amended G. L. c. 140, § 131, by St. 1998, c. 180, § 41,[2] to read in pertinent part:

> "(*d*) Any person . . . may submit to [the appropriate] licensing authority . . . an application for a Class A or Class B license to carry firearms, or renewal of the same, which such licensing authority . . . may issue if it appears that the applicant is a suitable person to be issued such license, and that the applicant has good reason to fear injury to his person or property, or for any other reason, including the carrying of firearms for use in sport or target practice only, subject to such restrictions expressed or authorized under this section, *unless the applicant*:

> "(i) *has . . . been convicted . . . of . . .* (b) *a misdemeanor punishable by imprisonment for more than two years . . .*" (emphasis supplied).

The plaintiff sought judicial review in the District Court, where, after hearing, the police chief's decision was upheld.

[2]Minor amendments to the introductory language in G. L. c. 140, § 131(*d*), reflected in the quoted language, were subsequently made by St. 1998, c. 358, § 6.

The plaintiff sought further review in the Superior Court. Both sides moved for judgment on the pleadings, and the Superior Court judge affirmed the chief's decision, dismissing the plaintiff's petition. The plaintiff appeals, and we affirm.

1. The plaintiff's principal contention is that the statute does not cover persons whose disqualifying acts occurred prior to the 1998 amendment. As his conviction for a second offense of operating under the influence of alcohol falls under this category, he argues that the police chief abused his discretion in revoking the plaintiff's license to carry. It is true that "[u]nless the legislative intent is unequivocally clear to the contrary, a statute operates prospectively, not retroactively." *Sentry Fed. Sav. Bank* v. *Co-operative Cent. Bank*, 406 Mass. 412, 414 (1990). However, it is also the case that "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

We do not think that the Legislature would have employed the words "has . . . been convicted" in G. L. c. 140, § 131(*d*)(i)(*b*), and identified misdemeanors punishable by more than two years unless it intended that circumstance to be an automatic disqualification. Were this not the situation, the Legislature could have allowed the licensing authority discretion to consider conviction as one of several factors of suitability to carry a firearm. To ignore its words in this context would violate the established principle of statutory interpretation that every word of a statute should be given bearing in furtherance of the legislation's purposes. See *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 286 (1996). We conclude that the Legislature intended the amendment to include all such convictions, whenever they occurred. It would be an illogical construction of this part of the statute to bar persons convicted after 1998 from carrying a firearm while considering those convicted before 1998 as suitable.

As we conclude that the defendant correctly interpreted the statutory requirement to prohibit the plaintiff's licensure, there was no abuse of discretion. See G. L. c. 140, § 131(*f*); *Godfrey* v. *Chief of Police of Wellesley*, 35 Mass. App. Ct. 42, 46-47 (1993), and cases cited.

2. Next, the plaintiff poses several constitutional challenges to the statute. Successful constitutional challenges are difficult to mount because "[e]very rational presumption is indulged in favor of the validity of an act of the General Court." *Campbell* v. *Boston*, 290 Mass. 427, 429 (1935). "[P]laintiffs carry a heavy burden in seeking to overcome the statute's presumption of constitutionality." *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190 (1978).

a. *Reasonableness.* The plaintiff first argues that a retroactive application of the statute[3] renders it constitutionally infirm. We start with the proposition that retroactive statutes are not per se unconstitutional: only those retroactive statutes that are "unreasonable" violate constitutional guarantees. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, supra at 189-190. Reasonableness is determined by three considerations: "the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights . . . affected retroactively; and the extent . . . of the statutory . . . impact." *Id.* at 191.

In this case, the public interest at issue is one of the utmost importance, as the statute governing who may lawfully carry a firearm directly affects the physical safety of the citizenry. The Legislature could have concluded that there was an urgent need to remove weapons from the hands of those whose criminal records indicate that they have flouted the law in the past. Again, if such persons are not suitable to carry firearms, then they are equally unsuitable whether their convictions were before or after 1998, and retroactive legislation makes eminent sense.

As for the nature of the rights affected, it is relevant that "the

[3]Noting that the plaintiff's license renewal application was made in 1999, the defendant argues that the amendments to the firearms licensing statute operate only prospectively, affecting applications, such as the plaintiff's, made after the amendments came into effect in 1998. While there is much merit to the defendant's argument, we address the substance of the plaintiff's contentions nonetheless.

bearing of weapons was not treated at common law as an absolute right and had indeed been regulated as early as the Statute of Northampton of 1328." *Commonwealth* v. *Davis*, 369 Mass. 886, 888 n.4 (1976). Additionally, those challenging retroactive application of statutes generally "must show that they acted in reasonable reliance upon the previous state of the law. The [plaintiff] does not make, and could not credibly make, any argument that he would have acted differently had he known [the amendment disqualifying him from carrying a firearm] would be enacted." *Leibovich* v. *Antonellis*, 410 Mass. 568, 578 (1991). (Citations omitted.) *Parello* v. *McKinney*, 46 Mass. App. Ct. 785, 791 (1999). This factor, too, weighs in favor of reasonableness.

Finally, the extent of the statutory impact is not excessive. The provision prohibiting licensing of those who have been convicted of a misdemeanor punishable by more than two years is a reasonable restriction. It appears to be the result of some consideration, neither prohibiting nor permitting everyone who has been convicted of any misdemeanor, but instead drawing a distinction among them based on the seriousness of their offense. Indulging, as we must, all presumptions in favor of validity, we conclude that, to the extent the statute is retroactive, it is reasonable.

b. *Ex post facto and double jeopardy.* The plaintiff next claims that the amendment is punitive in nature, and therefore an unconstitutional ex post facto law, which places him in double jeopardy. These arguments fail, among other reasons, because the statute governing who may carry firearms is not punitive. A license to carry a firearm is a privilege voluntarily granted and revocable pursuant to a statute that aims "to limit access to deadly weapons by irresponsible persons." *Ruggiero* v. *Police Commr. of Boston*, 18 Mass. App. Ct. 256, 258 (1984). Like other public safety statutes, G. L. c. 140, § 131, lacks the punitive element necessary to invoking the doctrines of ex post facto and double jeopardy. "The historical aim of licensure generally is preservation of public health, safety, and welfare by extending the public trust only to those with proven qualifications. See *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 527-528 (1979). Moreover, statutes

making continued licensure dependent on continued eligibility for the public trust are historically nonpunitive. See, e.g., G. L. c. 112, § 87L (1994 ed.) (barber's certificate of registration may be suspended 'for failure to comply with sanitary rules or regulations . . . or for having imparted any contagious or infectious disease'); *Feldstein* v. *Board of Registration in Medicine*, 387 Mass. 339, 341-342 (1982) (revocation of license to practice medicine nonpunitive); *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 928 (1980) (common victualler's license revocable for failure to operate eating establishment in manner consistent with public health and safety)." *Leduc* v. *Commonwealth*, 421 Mass. 433, 435 (1995), cert. denied, 519 U.S. 827 (1996).

c. *Due process and property rights.* Finally, the plaintiff challenges the licensing statute as unconstitutional for lack of due process and a denial of his property rights. The short answer to this argument is found in *Chief of Police of Shelburne* v. *Moyer*, 16 Mass. App. Ct. 543, 547 (1983), where we said: "There is no right under art. 17 of the Declaration of Rights of the Massachusetts Constitution for a private citizen to keep and bear arms and thus to require that a citizen have a license to do so is not unconstitutional; nor is there any question of a property right or deprivation of liberty involved in the statutory procedures for obtaining a license to carry firearms" (citation omitted).[4]

*Judgment affirmed.*

---

[4]The plaintiff also claims that the suitability standard is unconstitutionally vague. See *Commonwealth* v. *Gallant*, 373 Mass. 577, 580 (1977). Because his license was revoked and renewal denied under the explicit statutory provision rather than under the discretionary suitability determination, we need not reach this argument.